[No. 1266.]

## JOSEPH W. JERRETT, Respondent, v. DANIEL MAHAN, Appellant.

ACTION TO RECOVER DAMAGES FOR WRONGFUL DIVERSION OF WATER
—DELAY IN ENTERING JUDGMENT—INCAPACITY OF JUDGE—NEG-
LIGENCE.—The verdict of the jury and the findings of the trial judge,
all in favor of the plaintiff, were filed in the district court in 1881. The
plaintiff and defendant each moved for a judgment at once, which
motion was taken under advisement by the judge, who shortly after-
wards died without disposing of such motions. The plaintiff's attor-
ney succeeded said judge in office, and it was not until 1887 that a
judge competent to act was provided. Neither party in the mean
time took any steps in the case. *Held*, the condition of both parties
in reference to the controversy remaining the same, that the plaintiff
was not barred by his own laches, or negligence, from moving for
judgment in 1887.

IDEM—RIPARIAN RIGHTS — APPROPRIATION — PRESCRIPTION — SUFFICIENCY
OF PLEADINGS.—In a suit brought to recover damages for diverting
water claimed for irrigating purposes, and for an injunction, defend-
ant made no claim to be the riparian proprietor of certain streams,
but claimed the waters by prior appropriation and prescription. *Held*,
that to support the claim for damages, the material allegations in the
complaint were prior appropriation of the water by the plaintiff, and
the diversion thereof by the defendant, and that it was unnecessary to
aver riparian ownership in the plaintiff.

IDEM — INJUNCTION — PLEADING — EQUITABLE RELIEF. — *Held, further*, that to enable plaintiff to obtain the injunction, it was only necessary, in addition to the facts averred in the complaint which were relied upon for a judgment for damages, to aver facts sufficient to obtain equitable relief, without repeating the averments already made.

IDEM — FINDINGS OF JURY — WHEN SUFFICIENT. — *Held, further*, that the answer of the jury of "We do not know" to the question, "How much of the waters of that stream was required for the proper irrigation of crops growing on that land in 1875?" was immaterial, and their finding that all the waters of said stream were used by plaintiff in irrigating said land, and, if properly used, all was necessary for that purpose, controlled and sustained the verdict for plaintiff.

IDEM. — *Held, further*, on the answer of "Yes" by the jury to the question, "Has the defendant since the year 1872 used the waters of Snow creek for the purpose of irrigating, peaceably, openly, notoriously, under claim of right, and adversely to plaintiff and all other persons?" that the trial judge correctly applied this finding to all waters of Snow creek except those naturally flowing in the two south branches (which were claimed by plaintiff), in view of the facts that defendant, from 1873 to 1876, used the waters of said two south branches to irrigate plaintiff's land which he occupied as tenant, and that plaintiff made no claim to the other branches of the same creek which ran through defendant's land.

PLEADINGS AND FINDINGS REVIEWED. — *Held*, sufficient to sustain the judgment for damages in favor of the plaintiff. (See opinion for the facts.)

APPEAL from the District Court of the State of Nevada, Elko County.

A. L. FITZGERALD, District Judge.

The facts are sufficiently stated in the opinion.

*Crittenden Thornton* and *J. W. Dorsey*, for Appellant.

I. The plaintiff's motion for judgment should have been denied for laches, negligence and inexcusable delay. The principle of law is universal that *all* rights of action may be lost by a lack of diligence in asserting them. The case at bar is one of the most proper cases for the application of the doctrine which could possibly arise. It is no excuse for the plaintiff in this case that the judge, before whom the case was tried, had died without deciding the motion. The delay was inexcusable and amounted to gross negligence on the part of the plaintiff. (*Dupuy* v. *Shear*, 29 Cal. 238; *Reynolds* v. *Paige*, 35 Cal. 296; *Grigsby* v. *Napa Co.*, 36 Cal. 585; 95 Am. Dec. 213; *Carpentier* v. *Minturn*, 39 Cal. 450; *Eldridge* v. *Kay*, 45 Cal. 49; *Lander* v. *Flemming*,

47 Cal. 614; *Chipman* v. *Hibberd*, 47 Cal. 638; *Simmons* v. *Keller*, 50 Cal. 38; *Estate of Crosby*, 55 Cal. 574; *San Francisco* v. *Calderwood*, 58 Cal. 355; *Kornahrens* v. *His Creditors*, 64 Cal. 492.) It may as well be contended that this action has been and was "abandoned" by the plaintiff, within the true intent and meaning of sub. 4 of Sec. 151 of the civil practice act. If the "abandonment" spoken of by the statute may be manifested by deeds, and not by words, the plaintiff's actions have been conclusive upon the question of his intents and purposes.

II.   But even if we are not sustained in the two foregoing propositions, still the court erred in granting an injunction against the defendant. The authorities are numerous, even in cases of undoubted legal rights of property, that the right to an injunction may be lost by delay and acquiescence.

III.   The complaint does not state facts sufficient to constitute a cause of action for any relief. Counsel reviewed the pleadings at length, and contended that the complaint was based upon riparian ownership solely and stated no right for a trespass on which the law would give a remedy; that the allegations do not state sufficient ownership of the water, under the doctrine of appropriation; that the allegations are mere matters of evidence and not of material facts, and that plaintiff should have alleged that he was the owner of, or entitled to the use or flow, of the waters of Niagara creek.

IV.   The matters alleged as ground for equitable relief in both counts are not sufficient to sustain the judgment as to the equitable relief therein granted.

In neither of the counts is there any allegation of the plaintiff's ownership or appropriation of the use or enjoyment of the water, or of any trespass of the defendant. All that is alleged is matter tending to show the irreparable nature of the defendant's trespasses. It is well settled that in a complaint for both legal and equitable relief the statement of each cause of action must be separate and complete in itself. Nor can the allegations of any count be eked out by those of another, unless by express reference. (*Gates* v. *Kieff*, 7 Cal. 124; *More* v. *Massini*, 32 Cal. 595; *Haskell* v. *Haskell*, 54 Cal. 262; *Barlow* v. *Burns*, 40 Cal. 351; 1 Chit. Pl. 429.)

V.   The judgment rendered by the court is unsupported by the findings, and the same are insufficient to sustain the judg-

ment. The findings on the subject of the amount of water of Niagara creek *necessary* for the proper irrigation of plaintiff's lands are insufficient. The issue of the amount of water *necessary* for the purpose to which the same is applied, is always material. Every appropriation of water is limited to a beneficial use, and the quantity must be adequate to that use and no more. A man cannot appropriate a thousand inches of water to irrigate an acre of land. The finding of the jury in answer to the eighth issue submitted on behalf of plaintiff *"We do not know,"* is not a finding, but the reverse. No judgment can be based upon a special verdict where there is a failure to find upon a material issue. (*Woodson* v. *McCune*, 17 Cal. 298.) The findings in relation to Snow creek contain every element of an adverse use known to the law, for a period of over eight years. These findings, therefore, affirm a complete defense to the action as to the waters of Snow creek. The judgment is, therefore, erroneous in granting an injunction as to the waters of Snow creek.

*Robert M. Clarke* and *Talbot & Farrington*, for Respondent.

I. The findings of the court and the verdict of the jury are no portion of the judgment roll. And although they are recited in the judgment, they are still the findings of the court and the verdict of the jury. As such they cannot be considered by this court unless they are included in the statement on appeal. (Gen. Stat. 3349, 3354, 3358; *Anderson* v. *Gilmore*, 13 Nev. 84; *Bowker* v. *Goodwin*, 7 Nev. 137; *Imperial S. M. Co.* v. *Barstow*, 5 Nev. 254; *Nesbitt* v. *Chisholm*, 16 Nev. 39.) The validity of the judgment would in no wise be affected by the omission of all the recitals. (*Green* v. *Swift*, 50 Cal. 455.) The findings recited in the verdict are irrelevant and should be disregarded.

II. The objections to plaintiff's motion for judgment were properly overruled. The court was bound to render the judgment on the merits of the case. (Gen. Stat. 3173; *Merritt* v. *Campbell*, 47 Cal. 542; *Hemphill* v. *McClimans*, 24 Pa. St. 367.) The defendant having been in a situation to move in this cause (Gen. Stat. 3222,) has by his own neglect waived his objections to any delay. (*Griffith* v. *Gruner*, 47 Cal. 644; 1 Van Sant. Eq. 319; Luke Eq. Ple. 84, 105; *Whitney* v. *Mayor*, 1 Paige, 548; *Rogers* v. *Lift*, 17 Johns. 267.)

III. The plaintiff was properly allowed his costs. This is not an action for damages within the meaning of sections 3497 and 3500 of the general statutes. But it is a case wherein it is the usual and proper practice to tax the costs against the party in the wrong, notwithstanding the amount of damages. (*Brown* v. *Ashley*, 13 Nev. 251; Id., 16 Nev. 315; *Marius* v. *Bicknell*, 10 Cal. 221.)

An easement is an interest in land, and a claim that an easement exists is a claim of title to real property. (Bailie Tr. 358; *Alleman* v. *Dey*, 49 Barb. 641).

If the plaintiff recover less real property than he sue for, he is still entitled to costs, even though the defendant recover judgment for the remainder of the property. (*Havens* v. *Dale*, 30 Cal. 547; *Lawton* v. *Gordon*, 37 Cal. 202.)

It is the practice to cover the whole or a specific part of the water in the decree and injunction, and not merely so much as may be necessary for the purposes to which it has been appropriated by the party whose rights are to be protected by the injunction. *Hobart* v. *Wicks*, 15 Nev. 421; *Lake* v. *Tolles*, 8 Nev. 287; *Covington* v. *Becker*, 5 Nev. 282; *Marius* v. *Bicknell*, 10 Cal. 218; *Curtis* v. *Sutter*, 15 Cal. 262.)

When the answer sets up a right to divert the water, and such diversion may, by lapse of time, become the foundation of an adverse right in the defendant, it is sufficient to warrant the interference of equity by way of injunction. No further showing that defendant threatens to continue the diversion is necessary. (Ang. on Wat. Cour., Secs. 444, 449.)

In such cases it is not necessary to show actual damages in order to authorize a court to issue an injunction and make it perpetual. (*Brown* v. *Ashley*, 16 Nev. 316, and cases cited.)

The objection that the general verdict may be based upon the doctrine of riparian ownership cannot now be raised. Each count of the complaint sets up both a riparian right and a right by appropriation to the waters in dispute. There is nothing in the transcript to indicate upon which right the jury based its verdict or that the jury was improperly instructed. In the absence of such showing the court must presume that the jury acted under a correct apprehension of the law. (*Garrison* v. *McGlockley*, 38 Cal. 79; *Tully* v. *Harloe*, 35 Cal. 309; 95 Am. Dec. 102; *Aldrich* v. *Palmer*, 24 Cal. 515; *Seale* v. *Emerson*, 25 Cal. 294.) Where the verdict is *advisory*, erroneous instructions will not be received. (*Still* v.

*Saunders*, 8 Cal. 283; *Johnson* v. *Harmon*, 94 U. S. 372.)
Whether the verdict be regarded as the finding of the jury, or
the finding of the court by subsequent adoption, the objection is too
late and not properly taken.    (Gen. Stat. Sec. 3217; Hayne N. T.
and App. Secs. 236, 244.)

By the Court, LEONARD, C. J.:

This is an action to recover damages for the alleged wrongful
diversion and use of the waters of Niagara creek, and the
three southernmost branches of Snow creek, described in the
complaint, and for equitable relief against further diversion.

In his answer defendant prays for a decree adjudging to him
the right to use the waters of Snow creek, or a sufficient quan-
tity thereof to irrigate so much of his land as may be irrigated
by said waters; that his right to so much of the waters of
Niagara creek as he had diverted through "Mahan's Ditch" be
adjudicated superior to that of plaintiff; and that plaintiff be
perpetually enjoined from interfering with his said rights.    The
action was commenced April 13, 1881, and on July 26, 1881, a
trial was had which terminated in a verdict by the jury on
eighty-three special issues of fact, and a general verdict in
favor of plaintiff, for five dollars damages.    On the same day
the court made and filed certain findings, and plaintiff and
defendant, each by his counsel, made a motion for judgment
in his favor, upon the pleadings, general verdict of the jury,
special verdict of the jury, and the findings of the court,
which motions were taken under advisement by the court, but
never decided.    No further action was taken in the case, so far
as the record shows, by the court or either party, until March
26, 1887, when plaintiff, by his present counsel, gave notice of
a motion for judgment on the pleadings, general and special
verdicts of the jury, and findings of the court before men-
tioned.    When the last-named motion came on to be heard, coun-
sel for defendant objected to the hearing of the same, and the
granting thereof, upon the ground that plaintiff had been
guilty of laches, negligence and inexcusable delay in making the
same.    The objection was overruled, and an exception taken.
Thereupon counsel for defendant proved that Hon. J. H. Flack,
the judge before whom the case was tried, died in October,
1881, and, after the argument, judgment was rendered and

entered against defendant in the sum of five dollars damages; and it was ordered, adjudged, and decreed that, at the time this suit was brought, plaintiff was and is the owner of the usufruct, and entitled to use and enjoy, for the irrigation of the land described in the complaint, all the waters of said Niagara creek, and all the waters naturally flowing in the two southernmost branches of said Snow creek, at all times and whenever he requires the same for the proper irrigation of the land described in complaint; that defendant was and is the owner, and entitled to use for irrigation of the land described in his answer, and for stock and domestic purposes, all the waters of Snow creek naturally flowing therein, except that part naturally flowing in the two southernmost branches of said Snow creek; and each party was perpetually enjoined from depriving the other of any rights to him belonging, as set forth in the decree. Plaintiff recovered his costs.

1. It is urged that the court erred in granting the plaintiff's motion for judgment, on account of his laches, negligence, and inexcusable delay in making the same. From the facts above stated, it appears that each party claims to be the owner, and entitled to the use, of the waters in dispute, and asked affirma- tive relief against the other in relation to the same; that on the date of the verdicts, each submitted a motion for judgment in his favor; that the motions were taken under advisement by Judge Flack, who died October, 1881, before rendering judg- ment in the cause; that plaintiff made another and similar motion for judgment before Judge Fitzgerald in March, 1887, which was granted. It is also stated by counsel for defendant in their printed briefs, and is the truth, that Judge Bigelow, who was plaintiff's attorney when the suit was brought and tried, succeeded Judge Flack by appointment and election, and was the presiding district judge in Elko county, wherein the cause was tried, until January, 1887, when, for the first time after Judge Flack's death, a judge competent to render judg- ment was provided. Although it is not claimed that there is any statute of limitations within which this case falls, it is undoubtedly true, as claimed by the learned counsel for the defend- ant, that all rights of action may be lost by lack of diligence in asserting them; and, in proper cases, actions may be dismissed for want of prosecution, and oftentimes equity refuses to aid a party who has slept upon his rights. "To let in the defense

that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that the foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive and refuse relief. Every case is governed chiefly by its own circumstances; sometimes the analogy of the statute of limitations is applied, sometimes a longer period than that prescribed by the statute is required; in some cases a shorter time is sufficient; and sometimes the rule is applied where there is no statutable bar. It is competent for the court to apply the inherent principles of its own system of jurisprudence, and to decide accordingly." (*Sullivan* v. *Portland, etc., R. R. Co.*, 94 U. S. 811.) "The reason of the rule is apparent, and consists in the difficulty, and, in many cases, the impossibility, of ascertaining, after a great lapse of time, the facts necessary to enable the court to exercise its power with safety. He who delays asserting his rights until the proofs respecting the transaction out of which he claims his rights arose are so indeterminate and obscure that it is impossible for the court to see whether what seems to be justice to him, is not injustice to his adversary, should be denied all relief; for, by his laches he has deprived the court of the power of ascertaining, with reasonable certainty, what the truth is, and thus of doing justice." (*McCartin* v. *Traphagen*, 43 N. J. Eq. 323.) And in *Adams* v. *Taylor*, 14 Ark. 67, it is said that * * * "while courts of chancery may have a discretion to determine the rights of parties seeking an adjudication, notwithstanding the lapse of time, where the facts are not disputed, or are susceptible of being clearly ascertained, the reason why they refuse relief in accordance with a statute by which they are not expressly bound is the fear of doing injustice, and the inability to afford relief where the sources of testimony have become obscured or lost by lapse of time." In *Daggers* v. *Van Dyck*, 37 N. J. Eq. 137, the court said: * * * "The delay of the complainant in seeking redress constitutes no defense. It is only when the complainant has slept over his wrongs so long that, if relief be given to him, great and serious wrong will be done to the defendant, that laches constitute a complete defense. Here the parties are in almost the same position now that they were at the time the wrong for which redress is sought was done, and relief may be given to the complainant

without doing any harm whatever to the defendant." (And see *Spurlock* v. *Sproule*, 72 Mo. 510; *Lawrence* v. *Rokes*, 61 Me. 42; *Spaulding* v. *Farwell*, 70 Me. 21; *Wissler* v. *Craig*, 80 Va. 22; *Cranmer* v. *McSwords*, 24 W. Va. 601; *Neel's Appeal*, 88 Pa. St. 94; *Smith* v. *Thompson*, 7 Grat. 112; 54 Am. Dec. 126; *Getchell* v. *Jewett*, 4 Greenl. 367; *Platt* v. *Platt*, 58 N. Y. 646; *Burden* v. *Stein*, 27 Ala. 114; 62 Am. Rep. 758; *In re Lord*, 78 N. Y. 111; *People* v. *Common Council*, Id. 63.) ·

In the light of the above decisions let us now examine the claim of error under consideration. Conceding for the present that, aside from the question · of laches, plaintiff was entitled to the relief granted, the granting or refusing of the motion was within the legal discretion of the court, and its action will not be disturbed unless such discretion was abused. (Hayne N. T. & App. Sec. 289.) Lapse of time is the only evidence of laches or abandonment of the cause shown by the record. Judge Bigelow was disqualified except to call another judge or transfer the case to another judicial district for decision. We shall not stop to enquire whether he had power, or it was his duty, to dispose of it by either method upon his own motion. It cannot be said there was laches on the part of either party, during the time Judge Flack held the cause under advisement, that is to say, until October, 1881. It seems strange if no effort was made by either party to expedite a decision. But, under the circumstances, conceding there were five years and five months of inaction on the part of both · parties after Judge Flack's death, we cannot say the court abused its discretion in overruling defendant's objection on the ground of laches. The facts on which the court acted, and upon which only it could, at any previous time, have predicated its decision, were among the files and records of the court, unaffected by time. There were no new facts to be ascertained. The result of the original transactions was embodied in the verdict and findings. There was no showing or pretense that, by reason of delay, defendant had been deceived as to plaintiff's intentions or claims, or that by reason thereof he had been induced to do anything he would not otherwise have done. It was not shown or intimated that defendant had suffered the slightest injury on account of the delayed judgment, and no reason existed why the court could not do complete justice to

both parties on the 8th day of April, 1887, as well as it could have done so the day succeeding Judge Flack's death. We are satisfied with the conclusion reached for the reasons above expressed, and will not extend the volume of this opinion by discussing a question suggested at the oral argument, that is to say, whether or not defendant can complain of the delay, inasmuch as he did not himself move the court to call another judge, or transfer the cause to another district for decision, although after Judge Flack's death, as well as before, his motion for judgment was pending. (But see *Nevada Co. Canal Co.* v. *Kidd*, 28 Cal. 684; *Baird* v. *Moses*, 21 Ga. 250.)

2. It is claimed that under the law as declared in *Jones* v. *Adams*, 19 Nev. 78, the complaint states no cause of action, because it bases plaintiff's right to recover upon riparian ownership, and not upon appropriation. This case does not call for a discussion of the rights of riparian proprietors, nor does it require a restatement of the points decided in *Jones* v. *Adams*, which speaks for itself. In his complaint plaintiff alleges that "Niagara creek is a natural surface stream of running water which, until the commission of the grievances hereinafter stated, has from time immemorial constantly flowed over, upon, and through the lands of the plaintiff, * * * and of right ought still to flow over, through, and upon the same, and that said lands embrace the natural banks, beds, and channel of said stream." The same allegations are made in relation to the two southernmost branches of Snow creek. But following the allegations just stated in each cause of action is a full and explicit statement of facts showing an appropriation of all the waters of Niagara creek in 1875, and of the two southernmost branches of Snow creek in 1874. In his answer, defendant did not, as to Niagara creek, claim to be riparian proprietor, but alleged prior appropriations and title by prescription. As to Snow creek, two of its natural channels pass over and through defendant's lands, but the two southernmost ones do not. Defendant claimed the waters adjudged to plaintiff by prior appropriation only, and set up title by prescription to the same. From the pleadings and findings it seems plain that the case was tried mainly upon the two issues just stated raised by the answer,—prior appropriation and prescription,— and it is certain that by the judgment plaintiff was awarded no relief except such as he was entitled to receive upon findings

in his favor on those two issues. It is also claimed that the
complaint fails to state facts· constituting a cause of action
because there is no proper averment that plaintiff is the owner,
or entitled to the use or flow or enjoyment, of the waters of
Niagara creek, or to the two southernmost branches of Snow
creek. As to Niagara creek, the criticism of counsel is entirely
without merit. As to Snow creek there is no allegation in
terms that plaintiff is the owner or entitled to the use of the
waters naturally flowing in the two southernmost branches;
but plaintiff's appropriation in 1874, by means of dams and
ditches constructed by him for irrigating purposes upon his
land, his continued use thereof since that time, except when
prevented by defendant, and the necessity of such use, together
with ample facts justifying equitable relief, are fully averred, ·
and they are sufficient to sustain the judgment. The facts
material to be alleged were plaintiff's prior appropriation and
defendant's diversion. If plaintiff first appropriated the waters
in question for irrigating purposes upon his land, the law gave
him the right to continue their exclusive use regardless of the
pleader's opinion in the premises. When those facts were
alleged and admitted or proven, the law determined plaintiff's
rights to be that he was entitled to use and enjoy the waters up
to the amount of his appropriation; and an allegation of the
conclusion of law following the facts alleged would add noth-
ing to the pleading. Mr. Pomeroy says: "In accordance with
the principles of pleading adopted in the new American system,
the existence of a legal right in the abstract form is never
alleged by the plaintiff; but, instead thereof, the facts from
which that right arises are set forth, and the right itself is
inferred therefrom. The cause of action, as it appears in the
complaint when properly pleaded will, therefore, always · be the
facts from which the plaintiff's primary right, and the defen-
dant's corresponding primary duty, have arisen, together with
facts which constitute the defendant's delict or act of wrong."
(Pom. Rem. & Rem. Rights, Sec. 453.) Again it is urged that
"the matters alleged as grounds for equitable relief in both
courts are not sufficient to sustain the judgment as to the
equitable relief therein granted." To sustain this assertion
counsel for defendant say: "In neither of the counts is there
any allegation of the plaintiff's ownership or appropriation of
the use or enjoyment of the water, or any trespass of the defen-

dant. All that is alleged is matter tending to show the irreparable nature of the defendant's trespasses. It is well settled that, in a complaint for both legal and equitable relief, the statement of each cause of action must be separate and complete in itself. Nor can the allegations of any count be eked out by those of another, unless by express reference." We presume counsel's argument is predicated upon the theory that there are four causes of action stated in the complaint instead of two, —two for judgments at law and two for equitable relief,—and that the latter must contain all the allegations necessary to sustain the injunction granted, including those of plaintiff's ownership or right of use, or prior appropriation, and defendant's diversion, although the same facts are previously alleged in stating facts looking to legal relief; because it cannot be denied that plaintiff's appropriation and defendant's diversion are plainly and separately alleged in the parts of the complaint preceding the allegations justifying equitable relief. It may be admitted that, when a complaint contains more than one *cause of action*, " each count must contain all the facts necessary to constitute a cause of action; and that its defects cannot be supplied from statements outside of it, and not then if the matters omitted relate to the *gravamen* of the action." (*Haskell* v. *Haskell*, 54 Cal. 265; Pom. Rem. & Rem. Rights, Sec. 575.) This complaint fills every requirement stated and follows approved precedents. Plaintiff declares separately upon two causes of action only, although in each he seeks two kinds of relief, as he is permitted to do. (Pom. Rem. & Rem. Rights, Secs. 78, 437, 452, 454, 575; Bliss, Code Pl., Sec. 114.) In each cause of action the grounds of equitable interposition are stated subsequently to and distinct from those upon which the judgment at law is sought, and, in each, the portion which seeks equitable relief is separated from the preceding part by apt words. (*Natoma M. Co.* v. *Clarkin*, 14 Cal. 548.) As to each stream, all the facts stated as grounds for legal and equitable relief constitute but one cause of action, and in seeking the equitable interposition of the court, it was only necessary or proper to allege other facts which, in addition to those previously stated as grounds for a judgment at law, would justify the injunction sought.

3. It is asserted that "the judgment rendered by the court is unsupported by the findings, and the same are insufficient to

sustain the judgment." As to Niagara creek it is said they are
insufficient because the amount of water necessary for the proper
irrigation of plaintiff's land is not found. This assertion is based
upon the answer to the seventh issue submitted to the jury on
behalf of plaintiff as follows: "How much of the waters of that
stream was required for the proper irrigating of the crops grow-
ing on that land during 1875? *Answer.* We do not know." In
view of other findings we are by no means convinced that a
finding of the amount of water required by plaintiff in 1875 was
material, but that question we need not decide. The findings
of the jury must be construed together; and so treating them
they show without substantial contradiction that all the waters
of Niagara creek, if properly used, were necessary to irrigate the
quantity of land plaintiff had under cultivation in the years
1875, 1876, 1879, and 1881. The jury found that plaintiff's
ditches constructed prior to and during the year 1875 were suf-
ficient to carry all the water of Niagara creek during the irri-
gating season, that the entire waters flowed through said ditches,
and were used by plaintiff and his tenants during that season
for irrigating the land described in complaint; that all the
waters of said creek, if properly used, were necessary to irrigate
the *quantity of land* plaintiff had under cultivation in 1875, 1879,
and 1881. It is true that, in answer to the question under con-
sideration, the jury said they did not know how much of the
waters of this creek was necessary for the proper irrigation of
the *crops growing on plaintiff's land* in 1875, but they did know
and find that the entire waters of the creek were required to
properly irrigate the *quantity of land* plaintiff had under culti-
vation that year. Since the last question was fully answered,
there must have been some reason, real or imaginary, why they
were unable to reply to the first. It may have been because
the testimony did not show that crops were grown upon the
entire amount of land cultivated that year. Crops do not always
grow, although the seeds are planted and the ground is watered.
It was found that in 1875 plaintiff and his tenants irrigated
seventy-four and one half acres of land with water from Niagara
creek, and, as before stated, that all the waters of said creek
were necessary, in that year, to irrigate that amount of land in a
proper manner. The jury may have said: "All the water was
required to irrigate the land plaintiff cultivated in 1875, but we
do not know there were growing crops on all the land, or half

of it, and consequently we do not know how much water was required to irrigate the growing crops properly." There is no necessary contradiction between the findings on this subject, and there is no failure to find that plaintiff required all the waters of Niagara creek for the proper irrigation of the land cultivated by him in 1875, 1879, and 1881. Finally, it is claimed that, as to *all* the waters of Snow creek, the findings contain every element of an adverse use known to the law for a period of more than eight years, that is to say, from 1872 to 1881, and consequently that the court erred in granting an injunction as to the waters of the two southernmost branches thereof. Again the findings must be construed together. At folio one hundred *et seq.* of the transcript, the jury was asked: "Has the defendant, since the year 1872, used the waters of Snow creek for the purposes of irrigating continuously, peaceably, openly, notoriously, under claim of right, and adversely to plaintiff and all other persons? *Answer.* Yes." · The court below applied these findings to all the waters of Snow creek, except those naturally flowing in· the two southernmost branches thereof; and the question is whether they embrace, or were intended by · the jury to embrace, the entire waters of all the branches of Snow creek, or only those included by the court. From the pleadings and findings construed together, it is plain to us that the jury did not intend to find that since 1872 defendant had used all the waters of Snow creek in the manner stated at folio one hundred, or had so used any of the waters naturally flowing in the two southernmost branches thereof. Some of the reasons for this conclusion will be stated. It was found that in 1873 defendant moved on to plaintiff's land, described in complaint, and erected a dwelling-house thereon, as lessee of plaintiff; that defendant *commenced* using the waters of the two southernmost branches *on the lands now claimed by him in* 1876; that his use thereof prior to that time was on plaintiff's land described in the complaint, and that in 1876 defendant changed the point of diversion of the waters of Snow creek from a point on plaintiff's land, described in complaint, to a point on the lands now claimed by defendant. It seems to us that, in the last finding, the two southernmost branches only were referred to, although the words, "the waters of Snow creek," were used; because plaintiff did not claim to have diverted, at any time, the waters of any of the other branches, and defendant "commenced using the waters of

the two southernmost branches on lands now claimed by him in 1876.

Until 1876 defendant's use of the waters of the two southernmost branches was upon lands occupied by him as tenant of plaintiff. But, say counsel for appellant: "This fact does not imply that defendant was tenant of plaintiff's water right also. A man may rent another's land and trespass upon his water right, or *vice versa.*" But let us consider the fact of defendant's tenancy in connection with others. It is admitted by the pleadings that the two southernmost branches of Snow creek flow naturally through and over plaintiff's land, and the jury found that the two other branches pass over defendant's land, described in the answer, in two natural channels. Defendant rented plaintiff's land in 1873, but it is not found that he used any of the waters of Snow creek for its irrigation in 1873, and in 1874 plaintiff, by means of dams and ditches, appropriated the waters of the two southernmost branches running through his land. Now, to say the least, it would have been an anomalous proceeding on the part of plaintiff to lease land to defendant that was valuable with irrigation, but practically valueless without it, and allow him to continue an adverse use of water diverted from the natural channels by plaintiff, for the sole purpose of irrigating the leased lands. There is no finding that plaintiff appropriated all the waters of the two southernmost branches in 1874, but the answer substantially admits it. The complaint contains an averment of such appropriation and use by means of dams and ditches, and defendant only denies that plaintiff constructed dams and ditches * * * whereby he diverted *all* the waters from the two southernmost channels, or that it was necessary to use *all* the waters of said channels, or that defendant had diverted or used *all* the waters of said channels, thus admitting plaintiff's appropriation and necessary use and his own diversion, except as to the smallest quantity flowing in said channels or branches. After making the admission just stated, defendant then alleges that in 1871, by means of dams and ditches leading *from the channels of Snow creek,* he diverted therefrom all the waters thereof *when necessary to irrigate his said land,* and that he diverted said waters for the purposes of irrigation every year thereafter. He does not allege that, at any time prior to plaintiff's admitted appropriation and use, he appropriated any of the waters of the

two southernmost branches, which were the only ones in dispute on the question of prior appropriation and use, but contents himself with the allegation that he diverted all the waters of *Snow creek when necessary to irrigate his own land,* without alleging that all of said waters was necessary, or that he used any portion thereof, except upon his own land described in the answer. In fact he limits all adverse use since 1871 to his own lands; that is to say, in his answer, his claim of right and title by prescription rests upon a use of the waters of Snow creek,—not of the two southernmost branches thereof,—upon his own lands described in the answer,—not plaintiff's. But the jury found that he did not commence using the waters of the two southernmost branches on his own land until 1876, and that his prior use was upon plaintiff's land, undoubtedly as plaintiff's tenant. Again, as to Niagara creek, it appears in both complaint and answer that defendant diverted only a portion of its waters. He claimed only so much thereof as ran through the "Mahan ditch," which was but a part of the creek. But, in many instances, the form of questions put to the jury, is the same as that of those under consideration in relation to defendant's adverse use of the waters of Snow creek. For instance, at folio 72 is this question: "When did Mahan commence running *the waters of Niagara creek* through the ditch above Jerrett's lands? *Answer.* Between April 25, 1876, and May 1, 1876." Now the jury did not intend to say that *all* the waters of that creek ran through defendant's ditch, nor did the court mean to submit such a question to them, because that was not claimed by either party, and was not the fact. And at folio 94 it is asked: "Upon what quantity of land did the defendant use *the waters* of Niagara creek in 1872, if any? *Answer.* About one acre." It would hardly be claimed that the jury intended to find that *all* the waters of that creek were used on one acre; because, as to that stream, it is alleged in the answer that "at all seasons of the year it affords a supply of water far beyond the necessities of the plaintiff for the proper irrigation of the lands described in the complaint, and that all of said waters cannot be used profitably or reasonably in the irrigation of said lands."

The court did not err in excluding the two southernmost branches of Snow creek from the findings under consideration; and there is no finding that defendant used any of the waters

Points decided.

of said branches continuously, peaceably, openly, notoriously, under claim of right, and adversely to plaintiff, for the period of five years, before the commencement of this action. The plaintiff was entitled to his costs. Judgment affirmed.