## COLE v. McLEAN.

[No. 14,237. Filed August 11, 1931. Rehearing denied December 15, 1931.]

*Beasley, Aikman, O'Brien & Beasley,* for appellant.
*Perry Douglas,* for appellee.

CURTIS, J.—This was an action brought by the appellee in the superior court of Vigo County to recover damages on account of alleged breach of warranties made by appellant to appellee in connection with the sale by the appellant to the appellee of a used automobile. The appellee filed his complaint in one paragraph, to which the appellant filed an answer in general denial, also a second paragraph of answer, to which second paragraph of answer, the appellee replied in two paragraphs, the first being new matter and the second in general denial. The appellant filed a general denial to the appellee's first paragraph of reply. There was a trial before a jury and a verdict in the sum of $300, upon which the court rendered judgment in accordance with the verdict. The appellant filed a motion for a new trial, which was overruled, and exception duly taken, and an appeal prayed to this court. The only error relied upon by the appellant for a reversal is that the court below erred in overruling the appellant's motion for a new trial. The motion for a new trial contained 11 grounds. The first, second, third, fourth and eleventh grounds are as fol-

lows: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) the verdict of the jury is contrary to the law and the evidence; (4) the assessment of the amount of recovery is erroneous, being too large; (11) the court erred in rendering judgment against the defendant on the verdict of the jury. The fifth, sixth, seventh, eighth, ninth and tenth grounds relate to the giving of and the refusal to give certain instructions.

The appellant has not seen fit to set out in his brief and recite any of the instructions given. Clause 5, Rule 22 of the Supreme and Appellate Courts, provides as follows: "When error is predicated on the giving or refusal of instructions, the statement must recite the instructions that were given." This court and the Supreme Court on many occasions have held that no question is presented on instructions unless clause 5 of Rule 22 is complied with. This leaves, therefore, only the first, second, third, fourth and eleventh grounds of the motion for a new trial to be considered. Of these, the third and eleventh grounds are not grounds for a new trial, and, therefore, they present no question.

The complaint, in substance, alleges: That the appellant is a dealer in new and secondhand automobiles, and that the appellee was the owner of a car which he desired to trade to the appellant as a part purchase price of a secondhand automobile then owned by the appellant; that the appellant placed a value of $600 upon the car which he traded to the appellee, allowing the appellee the sum of $250 as the trade-in value and agreed price of the car which the appellee traded to the appellant, and that said $250 was allowed upon the purchase price of the other automobile, leaving a balance due of $350, which was to be paid at the rate of $25 per month until fully paid; that the appellee, in pursuance

of said agreement, paid in cash to the appellant the sum of $150, leaving a balance of $200 unpaid. It was further alleged in the complaint that, at the time the appellee purchased the aforesaid automobile from the appellant, the appellant represented and warranted to the appellee that the automobile was in good condition in every way, and that it was sound mechanically, and that it was recommended as being an "A-1, all around, good conditioned automobile." The appellee further alleged that the said automobile sold by the appellant to the appellee was not in good condition as represented and warranted, and that it was not sound and not mechanically in good shape, and was not an A-1, all around, good-conditioned automobile. The appellee, in his complaint, then stated specifically a number of things which he said were defective in the automobile, and he further alleged that a number of times he took the automobile back to the appellant for repairs and that the appellant failed, neglected and refused to put said automobile in condition, and that on September 5, 1929, appellee took the said automobile to the place of business of the appellant and delivered it to the appellant, together with the keys, stating to the appellant at the time: "Here is your automobile." The appellee alleged a demand for the return of the money paid by him to the appellant and further alleged a demand for $75, in cash, for repairs paid out by the appellee for said car, and alleged a demand for damages in the sum of $100 by reason of the loss of use of said automobile, and asked in said complaint for a judgment in the sum of $575. The first paragraph of answer of the appellant was in general denial. The second paragraph of answer alleged that the contract between the appellant and the appellee was in writing. A copy of the written contract was made an exhibit. The appellant, in his said second paragraph

of answer, alleged that said car was sold upon said written contract by the appellant to the appellee without any express or implied warranties. To this paragraph of answer the appellee replied in two paragraphs, the second a general denial, and the first substantially as follows: That, before the purchase and sale of said automobile, the appellee had three meetings with the appellant and with one Carl Werneke, at which meetings the mechanical condition of the automobile was discussed and the price agreed upon, together with the exchange price of the car which the appellee traded to the appellant, and that, at none of said meetings, was there any discussion or suggestion that it would be necessary for the appellee to sign any papers or blanks in order that he might secure the automobile; that the written contract relied upon by the appellant, together with a conditional-sales contract, which was also in writing, were presented to the appellee for his signature at the same time and while the appellee was busy in a workshop where the appellee worked, and that the appellant represented to the appellee that he was in a great hurry and was pressed for time to attend to another sale, and that it was necessary for the appellee to sign the papers for use in their office files, and that that was the only purpose for which said papers were signed; that the appellant told the appellee that it would not be necessary for him to take up his time away from his work by reading the written contract, as the appellant was in a hurry and the appellee was busy at his work. The appellee further alleged that he told the appellant that he, the appellee, knew nothing about mechanical conditions of automobiles and knew nothing about the signing of papers, but that all he wanted was the appellant's automobile in good condition, in which it was represented to be in the sale talks between the appellant and appellee, and that appellant, at that time,

told the appellee that he was getting just exactly what was warranted to him by the appellant in the sales talks. That appellant, at that time, knew that the appellee was ignorant of the mechanical condition of automobiles and was unskilled in such knowledge, and that the appellee was relying wholly upon the appellant, and that this fact was well known to the appellant. It was further alleged that the appellee had known the appellant and Werneke for a number of years, and that he had great respect and confidence in them, and that the appellant knew that the appellee was relying wholly and solely upon the appellant's warranties regarding said automobile made by the appellant. The appellee further alleged that the appellant told him that the papers which he presented for signature in no way changed the terms or conditions that had been previously talked over relative to the automobile, and that the appellee would get the automobile just in the condition it had been represented to him, and that the papers presented were for the files of the company only. The appellee further alleged that, by reason of the false and fraudulent representations made by the appellant to the appellee, and by reason of the high regard in which he held the appellant, at the solicitation of the appellant, the appellee signed said written contract and said conditional-sales contract, and that, at the time he signed the same, he knew nothing of the contents of said papers, and that he relied upon the representations made by the appellant to him, and that the provisions of said written contract that the automobile was not guaranteed and that the sale was made without any express or implied warranties were in direct conflict and opposite to the warranties made by the appellant to the appellee, and that said papers were presented by the appellant to the appellee at a time when the appellant knew that the appellee was busily engaged in his work, and that the false and fraud-

ulent conduct of the appellant was the sole and only reason for the appellee signing said written contract and said conditional-sales agreement. To this paragraph of reply, there was a general denial filed. All of the evidence heard in the case was brought into the record.

The appellant in his reply brief makes the following statement: "While we feel that the appellee clearly failed to prove by a preponderance of the evidence that any misrepresentations were made to him by the appellant or his agent as to the condition of the car, we concede that there was some evidence in support of this allegation and that the court will not weigh the evidence." But appellant insists that there is an absolute lack of evidence of any kind tending to prove either that "appellee was induced to execute the written agreements stating that no warranties or representations as to the condition of the car had been made to him by fraudulent misrepresentations of the appellant or his agent as to the contents of these written instruments, or that such relations of trust and confidence existed between appellant and appellee as would justify appellee in signing these written instruments without reading them in reliance upon the representations of the appellant or his agent as to their contents." We cannot agree with the appellant in these contentions.

While, in the course of ordinary business transactions, men are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interest, yet this requirement is not to be carried so far that the law shall ignore or protect positive intentional fraud successfully practiced upon the simple-minded or unwary. As between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say in defense of the charge of fraud that the

innocent party ought not to have trusted him. In Bigelow, The Law of Fraud 525, 526, it is said: "Every man or woman, even though illiterate, is presumed to know the contents of a written instrument signed by him; but no presumption of knowledge will stand in the way of a charge of fraud made in regard to the contents of the writing. No doubt it would be imprudent, in a sense, not to read or to require the reading of an instrument before signing or accepting it; indeed the courts would turn a deaf ear to a man who sought to get rid of a contract solely on the ground that its terms were not what he supposed them to be. But the courts would not refuse to listen, on the contrary, they would give relief, where a plaintiff charged fraud upon the defendant in reading the contract to him, or in stating its nature or terms; and also in leaving out terms agreed upon, or in inserting terms not agreed upon. This would obviously be true of cases in which the complaining party could not read, or could read only with difficulty, or in which a printed document was concerned containing much fine print. But the rule is not confined to such cases; on the contrary it is very general."

It has likewise been held in this state that, when one person designedly and knowingly causes a false impression or belief to be entertained by another, and the latter is thereby induced to make a contract injurious to his best interests, such a contract is so impressed with fraud that the courts will set it aside. See *Laidla* v. *Loveless* (1872), 40 Ind. 211; *Ray* v. *Baker* (1905), 165 Ind. 74, 74 N. E. 619; *Kemery* v. *Zeigler* (1912), 176 Ind. 660, 96 N. E. 950.

After a careful reading of the evidence in the case, we cannot conclude that the verdict of the jury is not sustained by sufficient evidence or that it is contrary to law.

Judgment affirmed.