**DUSBABEK v. BOWERS, Admx.**

No. 20302.   Oct. 30, 1934.

Rehearing Denied June 25, 1935.

I. H. Lookabaugh, A. M. Beets, and Walter Marlin, for plaintiff in error.

Morrison, Morrison & Morrison, for defendant in error.

McNEILL, J. This is an action in replevin for the purpose of foreclosing certain mortgages, securing certain notes, given by the defendant, Frank Bowers, to the J. I. Case Threshing Machine Company, on a threshing machine separator, etc., and a second-hand engine.

The parties will be referred to as they appear in the trial of said cause; George F. Dusbabek, plaintiff in error, as plaintiff, and Frank Bowers, defendant in error, as defendant.

Plaintiff alleged two causes of action. The first cause of action involves a threshing machine, separator, and other equipment used in connection therewith, while the second cause of action involved the engine.

Plaintiff in his first cause of action alleged that he was the owner and holder of the notes and mortgages by assignment; that said defendant gave to said threshing machine company his promissory note, which amounted to $1,771, and as security for the payment thereof gave said company a chattel mortgage covering said threshing machine company equipment; that plaintiff had a special ownership in said property of the value of $1,500; that plaintiff was entitled to the immediate possession of the property and damages for the wrongful detention of the same in the sum of $1,000 by reason of the default of defendant in the payment of said notes.

Plaintiff in his second cause of action

alleged that on June 27, 1923, defendant was indebted to plaintiff in the sum of $900, being the balance due on certain notes and a mortgage which defendant had executed in favor of the said threshing machine company for the purchase of said engine. Plaintiff further alleged that the notes and mortgages had been assigned to him, and that he had a special ownership in the engine valued at $500; that defendant had defaulted in the payment of said notes, and that plaintiff was entitled to the immediate possession of the same and damages for wrongful detention in the sum of $500.

Defendant filed an answer, admitting the execution of the notes and mortgages, and set up certain defenses and interposed a counterclaim. Defendant denied he was indebted upon said notes and mortgages, and alleged that plaintiff was not entitled to possession of said property. The defendant further alleged that the engine which was sold to him was represented as being in good condition, and suitable in every way to operate and pull the defendant's separator used for the threshing of grain; that the representations were false and fraudulent; that the engine could not be used to operate the threshing machine separator; that, by reason of the defects in said engine, and its failure to come up to the representations made to him, he rescinded the contract of purchase of said engine and tendered the same to plaintiff upon the condition that the plaintiff return to him the notes and mortgage given by him for the purchase of said engine. Defendant also alleged in said second cause of action that at the time of the purchase of said engine he signed what was purported to have been a written order on which the engine would be shipped; that he did not have his glasses and was unable to read without them; that the agent, Ellison, knew that he could not read, and the instrument was signed in reference to the contract of purchase with the understanding that it contained a verbal agreement which had been previously entered into between them in reference to the engine being in good condition and serviceable for operating the separator; that the agent knew that the instrument which he signed was not in accord with the verbal agreement, and that defendant was entitled to rescind the contract and have the notes and mortgages covering the engine canceled and returned to him. Defendant also asked to have the collateral notes, amounting to $589, which he had delivered to the company as additional security for said notes, to be returned and for the proceeds of any collections which might have been paid on said collateral notes.

Defendant in his counterclaim also alleged that, after the company had been notified of the condition of the engine and its failure to operate the separator by reason of its leaky condition and burned out flues, the agent of said company requested him to try to have said engine fixed, and stated that the company would reimburse said defendant for money paid out in having the same repaired and indemnify said defendant against all loss and damages.

Defendant asked for damages, the items of which were set forth in his counterclaim, amounting to $8,111.88.

The case was tried to a jury, which returned a verdict in favor of the defendant. The verdict was as follows:

"We, the jury, empaneled and sworn to try the issues in the above entitled cause, do, upon our oaths, find for the defendant for the possession of the property sued for in the plaintiff's first cause of action or its value in the sum of $1,446.30/100 and also, the property sued for in the plaintiff's second cause of action or its value in the sum of $900, and that the defendant, in addition thereto, recover from the plaintiff, as damages, the sum of $690."

Special interrogatories were also submitted to the jury. Said interrogatories and answers given are as follows:

"Special Interrogatories.

"Interrogatory No. 1. Did the defendant Frank Bowers, read or know the contents of exhibit No. 15, being the order and contract signed for the shipment of the engine before or at the time he signed the same? Answer: No.

"Interrogatory No. 2. Were any representations or statements as to the condition of the engine in question in this case made to the defendant Frank Bowers by H. M. Ellison at the time or before he signed the order for shipment, being exhibit 15? Answer: Yes.

"Interrogatory No. 3. Were any representations or statements as to the condition of the engine made to the defendant Frank Bowers at the time he went to Okeene, Okla., to examine the same, and if so, by whom? Answer: Yes, by Geo. F. Dusbabek.

"Interrogatory No. 4. In what condition was the engine in question in at the time it was shipped to Daggs & Engle on his order in accordance with the written contract and order signed by him, being exhibit No. 15? Answer: Not serviceable.

"Interrogatory No. 5. In what condition

was the engine in question in this case in at the time it was taken on the writ of replevin as compared with its condition at the time it was delivered to the defendant under his contract? Answer: Practically the same condition as when it was received."

It appears that this case was filed in the district court of Canadian county in 1923. It was twice tried to a jury. On April 23, 1926, the jury returned a verdict in favor of the defendant in error on a cross-petition filed in that action. A motion for new trial was filed and overruled, but no judgment was ever rendered upon the verdict of the jury, until October 27, 1928. Plaintiff in error, upon the overruling of his motion for new trial, being prior to the rendition of said judgment, prosecuted an appeal to this court, being case No. 17964. That case was dismissed by reason of the fact that no final judgment had been rendered therein. See Dusbabek v. Bowers, 132 Okla. 179, 270 P. 3. On September 20, 1928, this court issued its mandate to the trial court, which was spread of record, and thereafter, on October 27, 1928, the trial court rendered said judgment in said action in conformity with the verdict of the jury.

There is no adjudication in an action at law when tried to a jury without a judgment rendered upon the verdict. Until the verdict of the jury has received the sanction of the court by passing into a judgment, it has no force and effect, and is lacking in the essentials of a final judgment. See Freeman on Judgments, vol. 2 (5th Ed.) sec. 718, p. 1516.

No judgment is rendered in an action until the trial judge officially announces his decision.

Mr. Justice Peckham, in the case of Oklahoma City v. McMaster, 196 U. S. 529, in speaking of the plea of res adjudicata without a judgment, said:

"In other words, the thing adjudged must be by a judgment. A verdict, or finding of the court alone, is not sufficient. The reason stated is, that the judgment is the bar and not the preliminary determination of the court or jury. It may be that the verdict was set aside, or the finding of facts amended, reconsidered, or themselves set aside or a new trial granted. The judgment alone is the foundation for the bar. Springer v. Bien, 128 N. Y. 99."

A judgment does not exist until it is officially pronounced, "expressed, or made known in some appropriate way." Goldreyer v. Cronan, 76 Conn. 113, 55 Atl. 594; Appeal of Bulkeley (Conn.) 57 Atl. 113.

No judgment having been rendered until after the mandate had been received by the trial court, the question presents itself whether the trial court had jurisdiction by reason of the delay in the rendition of said judgment to render and cause to be entered the instant judgment.

"Mere delay does not work a loss of jurisdiction to render or enter a judgment." 34 C. J., sec. 193, p. 65.

See Waters v. Dumas, 75 Cal. 563, 17 P. 685; Locher v. Livingston, 168 Iowa, 457 150 N. W. 614; Jerrett v. Mahan, 20 Nev. 89, 17 P. 12; Puls v. N. Y. L. & W. R. Co., 104 N. Y. S. 374; Fisher v. Portland R. Co., etc., 77 Ore. 529, 151 P. 735; State v. French, 100 Wash. 552, 171 P. 527.

In the case at bar the presiding judge was the same judge who had submitted the case to the jury. Ostensibly through oversight, the judgment had not been pronounced upon the verdict after its rendition. It is not shown that the rights of strangers have intervened.

There appears from the record three orders excepted to by the plaintiff, to wit:

(1) Judgment upon verdict of the jury entered October 27, 1928.

(2) Order of November 24, 1928, overruling motion to vacate the order overruling the motion for new trial which was filed May 18, 1928.

(3) Order of November 24, 1928, sustaining motion to strike the motion for new trial filed October 30, 1928.

The judgment was rendered on the verdict of the jury on October 27, 1928. Thereafter a motion for new trial was timely filed on October 30, 1928. The court on November 24, 1928, ordered that said motion for new trial be stricken. This was tantamount to overruling the same. At said hearing on said motion to strike said motion for a new trial on November 24, 1928, plaintiff gave notice in open court of his intention to appeal to the Supreme Court and requested an extension of time within which to make, serve, and settle a case-made, but the court specifically refused to grant an extension of time within which to make, serve, and settle a case-made. The court stated as follows:

"I see no reason for any extension at all. The statute gives you fifteen (15) three (3) and three (3)."

The case-made was served on December 5, 1928, which date was within eleven days after the motion for new trial was stricken and was within the fifteen days provided by

statute within which a case-made shall be served when no extension of time is made. Notice of settlement of case-made for March 23, 1929, was served on defendant. No suggestion of amendments was made, and the trial court settled said case-made on March 23, 1929. The appeal was lodged in this court on April 25, 1929, within six months provided by statute within which an appeal must be taken. The appeal was therefore perfected in time, and the case should be considered on the merits.

Defendant presents no defense to plaintiff's first cause of action. The controversy centers on the second cause of action in reference to the second-hand engine. In 1923, defendant purchased the second-hand engine from the plaintiff through H. M. Ellison, who had defendant to sign a purchaser's contract covering said engine. The engine was shipped to El Reno and accepted by defendant. Defendant executed the notes and mortgage to secure the purchase price of said engine. The defendant refused to pay the notes when the engine developed defects in service by reason of the flues and the firebox, etc. The defendant signed the purchase contract without reading it, because he could not read at the time without his glasses, which he did not have with him, and he did not request the agent to read it to him. This purchase contract contained a provision that it was understood and agreed that the engine was purchased as a second-hand engine and that "the company makes no warranties or guaranties of any kind, either express or by implication, except as to the ownership at the time and place of delivery." The defendant contends that he did not know that these provisions were in the instrument which he signed, and that the agent Ellison falsely represented that the contract did not contain anything but the verbal talk they had in reference to negotiating the sale, which was to the effect that the engine was in good condition and would satisfactorily operate the separator.

Plaintiff contends that the court should have directed a verdict in his favor; that the evidence was not sufficient to void the effect of a written contract; that there was no evidence that the contract as written did not embody the oral transaction, and that the agent had no authority to rescind the sale or to enter into a compromise or agreement after the sale had been consummated.

Plaintiff urges that the only excuse that defendant presents for not reading the contract or otherwise knowing its contents was he did not have his reading glasses at the time he signed it, and contends that the defendant was not excused from reading the contract or having it read to him because he did not have his reading glasses, and that under the rule announced in the cases of Green v. Cox Machinery Co., 116 Okla. 255, 244 P. 414, and McDonald v. McKinney et al., 44 Okla. 62, 143 P. 191, the defendant was not excused from reading the contract or having it read to him if he was in possession of his faculties. In furtherance of this contention, counsel for plaintiff cite that the correct rule has been announced by the Supreme Court of Louisiana in the case of Snell v. Union Sawmill Co., 105 So. 728, wherein it was held that it was incumbent upon the party before signing an instrument to read it, if he can read, and if he cannot read, to have it read to him and to listen attentively thereto.

In the case at bar, it must not be forgotten that we are considering a question of deceit and fraud based upon representations which induced the defendant to sign the purchase contract wherein it was provided that the company made no warranties of any kind either expressly or by implication in respect to the second-hand engine except as to the ownership at the time and place of delivery. The defendant testified as to the circumstances of his signing the contract as follows:

"Q. And, under what circumstances was your signature placed on this contract? A. Well, I told Mr. Ellison that I didn't have no glasses to read and he said, 'This is nothing only just a common order,' he says, 'just the same as the verbal talk we have had.' "

In 13 C. J. 372, it is said:

"A false representation that a writing prepared by one party embodies the terms of a previous oral agreement, inducing the other party to sign without reading the instrument, has in a number of cases been held fraud which the party misled may assert against the other. And this, although he may have been guilty of a want of prudence in relying on such representations, the underlying principle of these decisions being that the negligence of a party to a contract induced by the fraud of the other cannot be taken advantage of by the latter."

In 26 C. J. 1143, it is said:

"Moreover, in some jurisdictions the courts have held broadly that the defrauded party is not under an obligation to use diligence or ordinary prudence to discover the falsity

of representations, that the question on which liability turns is not whether a person of ordinary prudence would have been deceived, but whether plaintiff was deceived, and that one in fact deceived by representations may recover notwithstanding he was negligent in relying thereon."

See T. M. Dover Mercantile Co. v. Gates, 136 Okla. 197, 277 P. 231; Kelly v. Robertson, 61 Okla. 85, 160 P. 46; Prescott v. Brown, 30 Okla. 428, 120 P. 991.

In the case of T. M. Dover Mercantile Co. v. Gates, supra, this court said:

"When it appears that one has been guilty of intentional and deliberate false statements, by which to his knowledge another has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised ordinary care and diligence."

The weight of authority seems to support the rule announced in the Gates Case, supra. See Kramer et al. v. K. O. Lee and Sons Co. (N. D.) 250 N. W. 373; Cole v. McLean (Ind.) 177 N. E. 348; Conroy's, Inc., v. Ratz (Mo. App.) 14 S. W. (2d) 465; Hoyt et al. v. First Nat. Bank of Chester, W. Va., et al. (Tex. Civ. App.) 247 S. W. 637; Colorado Mortgage Co. v. Wilson (Colo.) 263 P. 406; Jones et al. v. Hurst et al. (Ind. App.) 149 N. E. 449.

In the case of Hoyt et al. v. First Nat. Bank of Chester, the court of Civil Appeals of Texas said:

"One guilty of fraudulent representations cannot defeat a recovery based thereon by the defense that the one whom he has thus defrauded has been guilty of negligence in failing to discover the fraud, especially where the one guilty of such representations is in a better position to know the truth than the one who relies upon them."

In the case of Colorado Mortgage Co. v. Wilson, supra, the court said:

"It is argued by counsel for defendant that, even if plaintiff's testimony is true, still they had no right to rely on defendant's statements, because there was no fiduciary relationship between them. We do not look on it this way. It may sometimes be easier to deceive a friend, but the idea that one may filch property from another just because the victim is a stranger is a bandit custom that courts have repeatedly discountenanced. The offender will not be heard to say that there is no remedy because the injured person' was too easily duped. It is not a good defense to answer that plaintiffs ought not to have trusted to the statements of defendant's agent because plaintiffs might have learned of their falsity."

In Conroy's, Inc., v. Ratz, supra, the court said:

"Appellant here urges that the defendant should be bound by constructive as well as by actual knowledge of any defect in the piano which was obvious, or which might have been known by proper diligence, adverting apparently to the doctrine of caveat emptor. But it has been held repeatedly that a representation may as well mislead, even where the means of knowledge are directly at hand, as where they are not, and that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge were open to him, and if the representation is of a character to induce action and did induce it, that is enough. Cottrill v. Krum, 100 Mo. 397, 13 S. W. 753, 18 Am. St. Rep. 549."

In Cole v. McLean, supra, the court said:

"In Bigelow on the Law of Fraud, 525-526, it is said: 'Every man or woman, even though illiterate, is presumed to know the contents of a written instrument signed by him; but no presumption of knowledge will stand in the way of a charge of fraud made in regard to the contents of the writing. No doubt it would be imprudent, in a sense, not to read or to require the reading of an instrument before signing or accepting it; indeed the courts would turn a deaf ear to a man who sought to get rid of a contract solely on the ground that its terms were not what he supposed them to be. But the courts would not refuse to listen, on the contrary they would give relief, where a plaintiff charged fraud upon the defendant in reading the contract to him, or in stating its nature or terms; and also in leaving out terms agreed upon, or in inserting terms not agreed upon. This would obviously be true of cases in which the complaining party could not read, or could read only with difficulty, or in which a printed document was concerned containing much fine print. But the rule is not confined to such cases; on the contrary it is very general.'"

In Kramer et al. v. Lee & Sons, supra, the Supreme Court of North Dakota said:

"It is contended that there was no evidence of fraud sufficient to warrant the submission of that question to the jury. This contention cannot be sustained. The undisputed evidence shows that each of the plaintiffs signed the contract at a different time and place. The plaintiff Roy Kramer signed it in a bank in the city of New Eng land at a solicitation of the president of the defendant company. Thereafter the president of the defendant company took the contract and the notes bearing Roy Kramer's signature to the farm of the plaintiff W. F. Kramer (Roy Kramer's father), where he signed the papers. The latter testified positively that he is unable to read. Both the plaintiffs testified that the president of the defendant company specifically recited to

them the warranties which he claimed were embodied in the written order and contract; that he insisted there was no occasion for their reading the order, and the testimony as to both plaintiffs indicate reasons which made it convenient and desirable that they accept his representations and sign the order without taking the time to read it or having it read. In the circumstances there is, we think, evidence justifying the submission of the question of fraud to the jury, and the defendant is not permitted to say that the plaintiffs should not have accepted his representations as to the contents of the order."

Under the facts in this case, we are of the opinion that the question of fraud in reference to signing the notes and mortgages concerning the purchase price of the engine was a question of fact for the determination of the jury. The jury resolved this question in favor of the defendant.

The court instructed the jury in defining the issues that the defendant elected to and did rescind the contract of sale in reference to the engine and tendered back the engine and demanded his notes and mortgage given to secure the same, including the collateral notes also delivered to the defendant company. In the instructions the court specifically told the jury that if the jury found these to be the facts and such rescission was done within a reasonable time, then the defendant would be entitled to the cancellation of said notes given for the purchase price of said engine and for the return of the collateral notes, which amounted to $589. The jury found by its verdict that the defendant was entitled to the possession of the engine. The court, by its instructions, did not authorize such a finding. The jury found by its interrogatories that the engine was in practically the same condition at the time of the trial as it was when it was received. The jury, by its interrogatories, found that the defendant did not know the contents of the contract of purchase when he signed the same, and that representations as to the condition of the engine before he signed said contract had been made to him by the agent, Ellison, in behalf of the plaintiff, and by its verdict it found that the defendant was entitled to the possession of said engine or its value in the sum of $900, and in addition thereto the sum of $690 for damages set forth in the counterclaim.

As we view this record, the defendant should not be entitled to the possession of the engine. He will be entitled, under the verdict of the jury, to the cancellation of the note and mortgage given to secure the purchase price of said engine and the return of the collateral notes which were given as additional security on said purchase price. In the event said collateral notes have been collected, then said defendant should be entitled to receive the proceeds thereof.

Section 9500, O. S. 1931 (5079, C. O. S. 1921), is as follows:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First: He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and,

"Second: He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

In Holcomb & Hoke Mfg. Co. v. Jones, 102 Okla. 175, 228 P. 968, with reference to the right of a purchaser to rescind a contract because of fraud, this court said:

"In all cases he may, if he so desires, retain what he received under the fraudulent contract and seek redress in an action which he may institute or by counterclaim in an action which the other party may institute against him on the contract, for the damages sustained by him by reason of fraud in its concoction, but such an action involves an affirmance of the contract. He cannot both affirm and disaffirm. He cannot repudiate the contract and demand restitution of what he has paid, and at the same time treat the contract as subsisting and recover the damages he has suffered by reason of the fraud."

No requested instructions were offered by either party, and from a review of the entire record it appears that the case was submitted to the jury under proper instructions.

The case is remanded, with directions to enter a judgment upon the general verdict to the effect, as applied to the second cause of action, that plaintiff is entitled to the possession of the engine in question and that the defendant have judgment for the cancellation of the said note and mortgage given to secure said purchase price of said engine and the return of the additional collateral notes amounting to $589, or in the event plaintiff has collected the same, that plaintiff account to said defendant for the proceeds thereof, and that said defendant

have judgment on his counterclaim in the sum of $690 against said plaintiff, and in all other respects said judgment is affirmed.

RILEY, C. J., and SWINDALL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and ANDREWS, J., absent.

On Rehearing.

McNEILL, C. J. Plaintiff contends that he should have been entitled to a directed verdict on his first cause of action for the sum of $1,771, being the admitted liability due on the note given for the payment of the threshing machine, separator, and other equipment described in said cause of action.

This contention is without support. As against this admitted liability defendant alleged damages by way of counterclaim in the sum of $8,111.88. From the evidence, the jury found, under proper instructions, that the damages of defendant exceeded the amount of plaintiff's admitted liability by the sum of $690. It is manifest that the threshing machine note was thereby fully liquidated and by reason thereof the defendant was entitled to a return of said property, involved in said first cause of action, which had been taken under a writ of replevin, or its value, which the jury fixed at $1,446.30.

Rehearing is denied.

OSBORN, V. C. J., and RILEY, BUSBY, WELCH, CORN, and GIBSON, JJ, concur. PHELPS, J., not participating. BAYLESS, J., absent.