KING v. STUART et al.

(Circuit Court, W. D. Virginia. October 7, 1897.)

1. INJUNCTION AGAINST TRESPASS.
Injunction will lie against trespass whenever the injury threatened would be irreparable, or when the trespass is a continuing one, so that a single action for damages would not be an adequate remedy.

2. SAME—CUTTING TIMBER.
Injunction against cutting trees is not limited to shade and ornamental trees, but extends to the cutting and carrying away of trees from forest lands, when the trespass is a continuing one, which would result in denuding the land of valuable timber.

This was a suit in equity by Henry C. King against H. C. Stuart and others to enjoin defendants from cutting timber from certain lands claimed by the complainant.

Maynard F. Stiles and Daniel Trigg, for complainant.

Burns & Ayres, for defendants.

PAUL, District Judge. This is a suit brought by the plaintiff, Henry C. King, to restrain the defendants from cutting and carrying away the timber of the plaintiff on certain lands claimed by him, lying in Buchanan county, Va., the same being part of a tract of 500,000 acres lying in the states of Virginia, West Virginia, and Kentucky. The plaintiff traces his title from a grant by the commonwealth of Virginia to Robert Morris, dated June 23, 1795, and, through successive conveyances to himself. The bill, after setting out the plaintiff's title, alleges:

"That the title of your orator. as above set forth, has been sustained and held to be valid by repeated adjudications of this court, as well as of the circuit court of the United States for the district of West Virginia, in which court said land was for many years held and managed as a trust estate. That said tract of land is wild and mountainous, and heavily timbered with valuable growth of poplar, oak, walnut, and other valuable trees, which constitute the principal. and almost sole value of said land, the same being practically worthless for agricultural, grazing, and other like purposes, and wholly worthless for such purposes to your ·orator, and unsalable therefor; and the portion of said land which is situated in said district was purchased by your orator solely on account of the timber aforesaid, and for the purpose of cutting, manufacturing, and marketing the same, and employing your orator's capital therein, and securing the profits therefrom. That that portion of said tract of land which lies in the state of Virginia is bounded on the western side by the state of Kentucky, and on the northern and eastern sides by the state of West Virginia, towards which states all the creeks and streams flow, which form the natural and only roadways to and from said lands, and the timber upon said lands can only be practicably removed therefrom to the markets therefor by hauling or floating the same out of the said state and into the state of Kentucky or West Virginia; and the said creeks, especially Knox creek and its · tributaries, and a wagon road leading therefrom down Bull creek, in West Virginia, to the Norfolk & Western Railroad, furnish ready means and facilities for the removal of timber from said land. That defendant Pleasants, under a pretended purchase from defendant Stuart, has wrongfully and unlawfully, and without the consent of. and against the warning and protest of, your orator, entered upon your orator's said land in said district, and has cut down, and·is preparing and threatening to remove, a large quantity of valuable walnut and other timber, and to cut and remove other timber, and your orator believes and avers that, unless restrained by order of this court, said Pleas-

ants and his agents, and those claiming under him, will speedily remove the said timber out of said state of Virginia, to be removed and shipped away upon the cars of the Norfolk & Western Railroad. That prior to the cutting of said timber by said defendant the said Pleasants inquired of your orator's counsel the situation and location of his said land, with the proposed purpose of avoiding any act of trespass thereon, and was advised by your orator's counsel that said tract of land embraced nearly all the country drained by Knox creek and its tributaries, and the neighborhood from which the said Pleasants has since cut said timber as aforesaid, and was shown a map representing and delineating the survey as made by the said W. D. Sell, C. E. That defendant Stuart, under whom said Pleasants professes to have cut said timber, claims, as your orator is informed, to be the owner of some tract of land adjoining or overlapping the land of your orator, but your orator declares that said Stuart is not, nor is any one claiming under him, nor was any one under whom Stuart claims, ever in possession of said land, or any part thereof, and the same is entirely in possession of your orator, and, if said Stuart claims under any writing or paper title, the nature and character thereof is unknown to your orator, but your orator declares the same to be wholly null and void; and, if such paper title shall be disclosed, then your orator will, by proper amendment or proceedings, declare and pray for the same to be adjudged and decreed to be null and void, and that the same be canceled and set aside. That said Stuart is also, as your orator is informed, participating in, and is interested in, the cutting and removal of said timber. That the cutting and removal of said timber is a practical destruction of your orator's land, and of the principal, and almost sole, value thereof to him, and is a permanent and irreparable injury and damage to the said land and to your orator, for which he has no plain, speedy, and adequate remedy at law, and wherefore your orator comes into this, your honor's court of chancery, and prays: That this his bill of complaint be received and filed in the said court, and that your orator have process of subpœna thereon against the said D. S. Pleasants and H. C. Stuart, requiring them, and each of them, to appear, and answer the allegations of said bill. That the said Pleasants and Stuart, and each of them, their servants, agents, and all persons acting or claiming under them, or either of them, be enjoined and restrained from entering upon or cutting or removing timber upon that portion of your orator's land situate in said state of Virginia, and from buying, selling, or trafficking in timber cut or to be cut thereon. That a receiver be appointed to take charge of the timber already cut by said defendants, and dispose of the same under the direction of the court."

The defendant H. C. Stuart demurs to the bill, and assigns as grounds of demurrer:

"First. That the said plaintiff has a full, complete, and adequate remedy at law, and is not, therefore, entitled to relief in equity for the matters complained of in said bill. Second. The said bill is in other respects uncertain, informal, and insufficient, and for other reasons to be assigned at bar."

The first ground of demurrer, viz. "that the plaintiff has a full, complete, and adequate remedy at law, and is, therefore, not entitled to relief in equity for the matters complained of in said bill," presents a clearly defined and important question for decision. A demurrer to a bill in equity admits the truth of the allegations of fact in the bill so far as the same are well pleaded. 1 Fost. Fed. Prac. § 108. The defendants in this cause, by their demurrer, admit that the complainant has title to the land mentioned in the bill lying within this district, and that he is in possession of the same. They likewise admit that the defendants have no title to said land; that they are not in possession thereof. They admit that the land is wild and uncultivated; that it is heavily timbered with a valuable growth of poplar, oak, walnut, and other valuable trees, and is practically worthless for agricultural purposes; that it was purchased

by the complainant solely on account of the timber; that they have, against the protest of the plaintiff, entered upon said land, and have cut down, and are preparing and threatening to remove, a large quantity of valuable walnut and other timber; that they enjoy ready facilities for removing the same out of the state of Virginia into the states of Kentucky and West Virginia. They further admit the facts upon which it is alleged that these trespasses, if permitted to continue, will result in permanent and irreparable injury and damage to the land and to the plaintiff. Admitting these facts, the defendants insist that a court of equity cannot, by injunction, prevent an actual or threatened trespass going to the destruction of the growing timber, and thereby causing irreparable damage to the plaintiff. It has frequently been held by this court, and by the circuit court of appeals for this circuit, that, pending an action at law to try the title to land, an injunction will lie to prevent the cutting and removal of timber until the question of the title has been determined at law; that the interests of the parties should remain in statu quo pending the litigation of the title. The defendants in this cause insist that, as there is no action pending at law involving the title to the land, an injunction will not lie to prevent the destruction of timber, which the plaintiff alleges will result in irreparable injury to him. The contention of the defendants is that the plaintiff has a full, adequate, and complete remedy at law for any damage he may suffer by reason of the trespasses of which he complains; that this remedy is an action at law for damages, to be measured by the value of the timber removed. That this was the doctrine at common law is admitted, but that its strictness has been greatly modified by the decisions of courts of equity in England and in this country is too well established to admit of discussion. A leading case in this country on this subject is that of Jerome v. Ross, 7 Johns. Ch. 315. In this case Chancellor Kent, while closely adhering to the common-law doctrine, said:

"In ordinary cases, this latter remedy [an action at law] has been found amply sufficient for the protection of property; and I do not think it advisable, upon any principle of justice or policy, to introduce the chancery remedy as its substitute, except in strong and aggravated instances of trespass which go to the destruction of the inheritance, or where the mischief is remediless."

He further says:

"I do not know a case in which an injunction has been granted to restrain a trespasser merely because he was a trespasser, without showing that the property itself was of peculiar value, and could not well admit of due recompense, and would be destroyed by repeated acts of trespass."

As cautiously and carefully as Chancellor Kent states the law, it seems that his view of the doctrine would cover the case at bar, and entitle the plaintiff to an injunction. But the law of injunction against trespass has, since the decision in Jerome v. Ross, been relaxed and expanded until now it is held that an injunction will lie to restrain trespass whenever the injury done or threatened would result in irreparable injury, or the defendant is insolvent. It will also be granted where the entire wrong cannot be redressed by one action at law for damages; this on the principle that equity

will interpose by injunction to prevent a multiplicity of suits. The result of the recent English and American decisions is very clearly stated in Pom. Eq. Jur. § 1357, as follows:

"If a trespass to property is a single act, and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. The principle determining the jurisdiction embraces two classes of cases, and may be correctly formulated as follows: (1) If the trespass, although a single act, is or would be destructive, if the injury is or would be irreparable,—that is, if the injury done or threatened is of such a nature that, when accomplished, the property cannot be restored to its original condition, or cannot be replaced by means of compensation in money,—then the wrong will be prevented or stopped by injunction. (2) If the trespass is continuous in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions. In both cases the ultimate criterion is the inadequacy of the legal remedy."

A note to this section says:

"The legal remedy is not adequate simply because a recovery of pecuniary damages is possible. It is only adequate when the injured party can, by one action at law, recover damages which constitute a complete and certain relief for the whole wrong,—a remedy virtually as efficient as that given by a court of equity. This conclusion is sustained by the concensus of modern decisions of the highest authority, although it cannot be claimed that the cases are unanimous in its acceptance."

In Spell. Extr. Relief, § 14, it is said that:

"Injunction will lie to prevent threatened trespass, though the damages be susceptible of compensation, or otherwise there is a probability of the wrong being often repeated, and plaintiff thereby involved in a multiplicity of suits."

In Id. § 346, it is said:

"Especially will relief be granted where trespass of cutting timber amounts to the destruction of the essential value of the estate in the character in which it has been enjoyed."

Beach, Mod. Eq. Jur. § 22:

"While, ordinarily, courts of equity will not interfere merely to redress a trespass, they will do so where the trespass is a continuing one, and a multiplicity of suits is involved in the legal remedy."

Id. § 721:

"Where trespass to property is a single act, and is temporary in its nature and effects, so that the legal remedy at law for damages is adequate, equity will not interfere; but, if repeated acts of trespass are done or threatened, although each of these acts, taken by itself, may not be destructive, or involve irreparable injury, and the legal remedy may, therefore, be adequate for each single act if it stood alone, the entire wrong may be prevented or stopped by injunction. * * * Equity will also interfere where the trespass is a continuous one, and the legal remedy would involve a multiplicity of suits."

The contention of counsel for the defendants that an injunction to prevent the destruction of trees is confined to trespasses which destroy groves kept for beautifying the owner's home or lands, or to shade and ornamental trees, cannot be sustained. The modern decisions apply the relief by way of injunction to coal, iron, and other mines, and to growing timber in a forest.

Applying the doctrine laid down in the authorities above quoted, I find no difficulty in deciding that the temporary injunction in this

cause was properly awarded, and should be perpetuated. The trespass committed is not a single act, temporary in its nature, and such as might be compensated for by a single action for damages, but is continuous from day to day, and, if permitted to continue, will ultimately result in the entire destruction of the valuable timber admitted to belong to the plaintiff. The damage done the plaintiff to-day by cutting his timber is the foundation for an action of damages. The measure of recovery, on the damages laid in the writ in an action brought for this trespass will be the injury suffered by the plaintiff to the time of bringing his suit. To-morrow the defendant commits further injury by cutting other timber, thus giving the plaintiff another cause of action, and requiring him to bring another suit, if he is to be remitted to his remedy at law; for it is not to be presumed that the plaintiff will stand idly by until the destruction of his property is complete, and, by his acquiescence, perhaps endanger his right of recovery of damages for the injury done him. This statement shows the multiplicity of suits to which the plaintiff would have to resort for redress, and at the same time it shows the futility of the plaintiff's remedy at law,—a remedy which must be full, complete, and adequate. The remedy by an action at law for damages against a trespasser may have been an efficient remedy at common law. But at this day, when property of all kinds readily and easily changes hands; when a man who is solvent to-day may be insolvent to-morrow; when the ready means of transportation quickly conveys personal property from one section of the country to another, perhaps out of the jurisdiction of the courts which have been established for the protection of property rights; and when we consider the long delays that often precede a trial, a judgment, and execution,—we see how entirely inadequate is the remedy at law to secure compensation to a person whose property is destroyed by a trespasser. So far from his remedy at law being full, complete, and adequate, he may find himself, at the end of his litigation, with a naked execution in his hands, with no means for its satisfaction. In the meantime his most valuable property interests have been destroyed.

The only remaining question for discussion is: Is the damage that will result to the plaintiff if the defendants are permitted to cut and carry away his valuable timber irreparable? It must be conceded that every man has a right to enjoy his own property in his own way; that he has a right to say how long he will keep it, and when and how he will dispose of it. In the case of a heavily-timbered tract of land, like that of the plaintiff, it is his right to say what part of it, if any, or what particular trees or kinds of trees, he will cut, and what he will leave standing. It is difficult to find any kind of property that will suffer more by unrestrained trespasses, or that is more difficult to be compensated for in damages after its destruction than a forest of growing timber such as the plaintiff's. The trees are increasing in size and value from year to year; the younger trees are constantly reaching nearer the size at which they can be profitably utilized, and are constantly rendering the estate more valuable. Coal and ore, if taken from mines, may

be measured as to quantity and value. They have no increasing value by reason of growth, but are of fixed quantity. Yet the removal of coal and ore from mines is held to work irreparable damage to the property of the owner of the mine. The court knows of no measure of damages that could be adopted by a jury that would properly estimate what would be the value of a body of timber five years hence that is destroyed by a trespasser to-day. The court has no hesitancy in holding that the destruction of the plaintiff's timber by the defendants, as they threaten to do, and were doing when restrained, would result in irreparable damage to the property of the plaintiff, and that the plaintiff is entitled to the protection of a court of equity.

The bill is not uncertain, informal, and insufficient, as alleged in the second ground of demurrer, and this ground of demurrer requires no discussion. The demurrer will be overruled. The temporary injunction heretofore awarded was properly awarded, and will be continued in force.