## MILLER & LUX v. RICKEY et al.

### (Circuit Court, D. Nevada. January 4, 1904.)

### No. 731.

1. **WATER COURSES—DIVERSION—INJUNCTION—TRANSITORY ACTION—JURISDICTION.**

   A suit brought to enjoin a defendant from wrongfully diverting, in California, the waters naturally flowing down a river having its source in that state, and flowing into and through the state of Nevada, where complainant's lands are situated, he being the lowest proprietor on the river, is an action transitory in its nature, so that a court in Nevada having acquired jurisdiction of defendant's person had jurisdiction to try the same.

2. **SAME—PLEADING—ADMISSION OF CLAIM.**

   Where a plea in a suit to restrain diversion of the water of a river alleged that defendants did not claim any right to divert the water except as tenants in common with complainants, but did not deny an averment in the complaint that defendants were claiming a right to deprive complainants of their rights in certain earlier appropriations, the plea was insufficient.

3. **SAME—PLEADING—ALLEGATIONS—DEMURRER.**

   A bill in a suit to restrain the alleged wrongful diversion of the water of a stream claimed to have been previously appropriated by plaintiff was not demurrable for failure to allege the particular point of the diversion or the means and methods used therein.

4. **SAME.**

   Where, in a suit to restrain the diversion of a water course, complainants claimed the right to use the water as prior appropriators, and the bill described the lands owned by complainants on which the water was beneficially used by townships and sections, it was not necessary for complainants to set out their derivative title to the water claimed, the particular tract or tracts of land that had been irrigated by them or their grantors, the character of the crops grown thereon, the names of complainants' grantors or predecessors in interest, or the fact that the raising of crops by irrigation on the land was successful.

5. **SAME—BENEFICIAL USE.**

   Where complainants in a bill to restrain the diversion of the water of a stream alleged that they were entitled, by virtue of a prior appropriation, to use the water for the purpose of irrigating their lands in Nevada, it was not necessary that the complaint should contain an allegation that such was a beneficial use of the water.

6. **SAME—LANDS IRRIGATED—DESCRIPTION.**

   Where, in a suit to restrain the diversion of the waters of a stream, complainants claimed to be prior appropriators as to a certain number of cubic inches of water, and to be entitled to certain additional amounts as the grantee of other appropriators, the bill should allege on what

lands such additional amounts of water appropriated by complainants' grantors were used by them.

**7. SAME.**

Where a bill in a suit to restrain the diversion of water of a stream to which plaintiff was entitled as a prior appropriator described the lands on which plaintiff claimed the right to use the water by townships and sections, such description was sufficient.

**8. SAME—PARTIES—CO-TENANTS.**

In a suit to restrain the alleged wrongful diversion of the water of a stream which plaintiff claimed by a prior appropriation, complainant's co-tenants were not necessary parties.

**9. SAME—INTENT TO CONTINUE WRONGFUL ACTS—INJUNCTION.**

Where a bill to restrain the alleged wrongful diversion of the waters of a stream alleged facts constituting a continuing trespass and a constant and wrongful diversion of the water, which tended to depreciate the value of complainant's lands, it was sufficient to justify an injunction, though it failed to allege that defendants intended, had threatened, or would continue such diversion unless restrained.

In Equity.

This case in its incipient stages bristles with objections upon every step that has been taken by either party. Several matters have been disposed of, and some of them have been deemed of sufficient importance to require a review of the authorities upon the points discussed. Miller & Lux v. Rickey et al. (C. C.) 123 Fed. 604. It has now reached a stage, by pleas and demurrers, where the character and sufficiency of the pleadings must be determined.

Following the former decision herein, the defendant Rickey elected to stand upon his plea to the jurisdiction of the court, in substance to the effect that the east and west forks of Walker river, the waters of which are claimed by complainant, rise in the state of California, and flow across the boundary line between the states of California and Nevada into the state and district of Nevada; that he is the owner of certain lands in California upon which he uses the waters of Walker river to irrigate and raise crops, etc., and that he does not divert any of said waters flowing in the state of Nevada. The defendants Simpson et al. elected to stand upon their plea: "That there is no controversy involved in this suit between complainant and defendants Angus McLeod, Patrick Gallagher, James C. Mills, Frank Feiganspan, Henry Wood, Amos K. Pollard, and Charles Snyder, and the parties joined as defendants as J. O. Birmingham and H. F. Swazey. That all of said defendants last above named are co-owners and co-claimants of water with plaintiff in one or other of the appropriations of water claimed by plaintiff for itself, and set forth in said bill of complaint, and that said last-named parties are necessary and indispensable parties to this suit. That none of said defendants last above named either own or claim to own, or have any water rights or right to divert or use any water for irrigation or otherwise, in any other manner or way than as co-owners and co-claimants and tenants in common with complainant, and that their interests lay wholly and entirely on the side of complainant in the controversy set out in said bill of complaint." And they plead "the want of proper and necessary parties to said bill, and the want of jurisdiction over the said suit and the subject-matter thereof and the parties thereto." Divers demurrers have been interposed by other of the defendants upon various grounds. The controversy in this suit is between citizens of different states; complainant being a citizen of California, and the defendants being citizens and residents of the state of Nevada.

W. C. Van Fleet and W. B. Treadwell, for complainant.

Trenmor Coffin, Chas. C. Boynton, and James F. Peck, for defendant Rickey.

Mack & Farrington and George S. Green, for defendants Simpson and others.

Cheney, Massey & Smith, for defendants Greenwood Ditch Company and others.

Mack & Farrington and George S. Green, for defendants George A. Green and others.

H. Pilkington, for defendants H. Wm. Schacht and others.

HAWLEY, District Judge. 1. Is the plea to the jurisdiction interposed by defendant Rickey well taken? This question has been elaborately discussed by counsel, and presented in various forms, and numerous authorities cited with reference thereto. These points and authorities have been carefully examined. In the disposition of the question it will be the aim of the court to confine itself to the real points directly involved by the particular facts of this case as drawn from the pleadings, and to the grounds upon which the decision will be based. It will, of course, be conceded at the outset that this court has no jurisdiction over lands and real estate situate without this district. It cannot abate nuisances outside of the district. It cannot reach property in rem wholly situate in other states. It cannot, by any decree which it may make in this suit, directly reach the dams, reservoirs, or ditches belonging to the defendant located entirely within the state of California. What is the nature and character of this suit, as shown by the bill of complaint and plea of the defendant? The suit is brought to enjoin defendants from the alleged wrongful diversion of the waters naturally flowing down the stream of both forks of the Walker river, having their source in California, and flowing down into and through the state of Nevada, where the lands of complainant are situated. The complainant is the lowest proprietor on said river. It claims to be entitled to a specified amount of water flowing in said river by virtue of prior appropriations thereof for the purpose of irrigating its lands for beneficial purposes. After alleging its rights and privileges in the premises, and the alleged wrongful acts of the defendants, it avers "that all of the said acts, doings, and claims of the said defendants are contrary to equity and good conscience, and tend to the manifest wrong, injury, and oppression of your orator in the premises; in consideration whereof, and for as much as your orator is remediless in the premises at and by the strict rules of the common law, and can have relief only in a court of equity, where matters of this nature are properly cognizable and relievable, to the end, therefore, that the said complainant may have that relief which it can attain only in a court of equity, and that the said defendants may answer the premises, but not upon oath or affirmation, the benefit whereof is expressly waived by the complainant," and prays "that the said defendants be forever enjoined and restrained from diverting any water from the said river above the points where the said complainant so diverts the same in such manner or to such extent as to deprive complainant of any of the water aforesaid; and that the complainant may have such further or other relief as the nature of the case may require and to your honors may seem meet." It will be observed, by reference to the statement of facts, that the plea of defendant is that the only water of the Walker river which he has diverted was under a claim of right to

divert by reason of his ownership of certain lands within the state of California. Without quoting the provisions of the statutes of the United States (1 Stat. 78, c. 20, § 11; 18 Stat. 472, c. 137, § 8 [U. S. Comp. St. 1901, p. 513]; 25 Stat. 434, 436, c. 866, §§ 1, 5 [U. S. Comp. St. 1901, pp. 508, 515]; Rev. St. U. S. § 738), and tracing their history, object, and purpose as to the jurisdiction of the United States courts, it may be said that the questions involved in defendant's plea cluster around the single proposition as to whether or not this suit is of a local or transitory nature.

Preliminary to the discussion of this question, it is proper to state that, subordinate to the fundamental principles of jurisprudence and the fixed rules of law arising out of the inherent character of local and transitory actions, and the absolute right of every sovereignty to prescribe laws for the acquisition, ownership, and disposition of property within its territory, and the binding force of the laws of the several states of the Union which constitute rules of property, the territorial jurisdiction of suits in the Circuit Courts of the United States is regulated and controlled by federal legislation enacted for that purpose, pursuant to the power vested in Congress by the federal Constitution. 1 Bates on Fed. Eq. Proc. § 78. The complainant's contention is that this suit is not, strictly speaking, of a local nature, and for that reason it could be brought in the district where the land of complainant is situated, and where the defendant resides. Among other positions taken by the defendant, it is contended that this court has no jurisdiction, (1) because the suit is of a local nature, and could not be brought outside of the state of California; (2) because the water right in controversy is in California; (3) because the wrongs and injury thereto alleged to have been committed by him were committed wholly within the state of California; (4) that complete relief could not be decreed by this court in favor of complainant without reaching the property rights of defendant, which are situate wholly in California. The wrong alleged against defendant Rickey appears by the plea to have been committed in California. The injury for which redress is sought in the bill of complaint is an injury to complainant's land, situate in the state of Nevada. The general principle is that, where a wrong has been committed by some person, and another person has been injured thereby, the injured person has a lawful right to recover from the wrongdoer; the wrong and the injury are both necessary elements, and the absence of either one of them would be fatal to a suit. The two elements must therefore exist and unite in order to form a good cause of action. The direct purpose of all judicial acts is relief to a litigant, which cannot be given by a judgment or decree alone, but must be given, if at all, through the enforcement of the one or the other by appropriate process; and it has often been said that the highest test of the jurisdiction of a court in a given case is found in the answer to an inquiry whether it has lawful power thus to enforce its judgment or decree. The general doctrine at common law is that actions for injury to real estate in the nature of a trespass or in case of nuisances—and other cases might be cited—is local, and must be brought in the county in which the land lies; but, where the act which caused the injury to the land was committed in another

county or district, suit may be brought in either at the election of plain-
tiff.

No attempt will. be made to review all the authorities cited as to
what are local or transitory actions. Courts of equity act in personam
or in rem, and the distinction between local and transitory actions pre-
vails in suits of equity as well as in actions at law. If a bill in equity
presents for the decision of the court a naked issue of title for real
estate, the suit is local, and must be brought in a court within whose
territorial jurisdiction the property is situated.

In Casey v. Adams, 102 U. S. 66, 26 L. Ed. 52, the court said:

"The distinction between local and transitory actions is as old as actions
themselves, and no one has ever supposed that laws which prescribed gen-
erally where one should be sued included such suits as were local in their
character, either by statute or the common law, unless it was expressly so
declared. Local actions are in the nature of suits in rem, and are to be
prosecuted where the thing on which they are founded is situated."

In Gould on Pleading (Additions by A. Hamilton) 113, the author
says:

"A local action must still be laid in the county in which the cause of ac-
tion actually arose; for, when the cause of action could have happened in
one county only, the venue is local. A transitory action may be laid in any
county which the plaintiff may prefer; for, when the cause of action could
have happened anywhere, the venue is designated as transitory. The pres-
ent locality of actions is founded in some cases on common-law principles,
and in others on positive enactments of statute law; * * * all actions in
which the subject or thing to be recovered is in its nature local."

After mentioning different classes of cases which are considered
local, the author says:

"If, however, a tortious act committed in one county occasions damage to
land or any other local subject situate in another, an action for the injury
thus occasioned may be laid in either of the two counties, at the choice
of the party injured. Thus if, by the diversion or obstruction of a water
course in the county of A., damage is done to lands, mills, or other real
property in the county of B., the party injured may lay his action in either
of those two counties."

And after stating that no action will lie in any sovereign state for
the recovery of land or tenements lying in another, because no com-
mon-law court has jurisdiction of local causes arising within a foreign
sovereignty, the author adds a note that this rule is not practically
applicable to its full extent to the jurisdiction and decrees of courts of
equity; "for these courts, by their power of acting in personam, when
the parties are within the reach of their process, can in many cases in-
directly enforce rights to real property situated in foreign countries."

In Deseret Irrigation Co. v. McIntyre, 16 Utah, 398, 406, 52 Pac.
628, the court held that water wrongfully diverted in one county to
the injury of plaintiff's rights in another constitutes one cause of
action. The action was brought to determine the rights of the plain-
tiffs and defendants to the waters of the Sevier river, flowing between
a certain dam in Sanpete county and the canals of the plaintiffs in
Millard county, and for a perpetual injunction to prohibit the defend-
ants from using or in any way interfering with the water of the river
to which the plaintiffs were entitled. It was there claimed that the

court had no jurisdiction, because the cause of action consisted of certain trespasses on real property situate in Sanpete county. The Constitution of the state provided (section 5, art. 8) that "all civil and criminal business, arising in any county, must be tried in such county," subject to the right to a change of venue, as provided for by law. The statute of the state (Sess. Laws 1897, p. 219, c. 52, § 14) provided that in bringing a suit for the "protection of rights acquired to water the plaintiff may make any or all persons who have diverted water from the same stream or source" and claim rights adverse to him "parties to such action," and settle the priorities and rights of all the parties in one suit. This statute was claimed to be unconstitutional. The court discussed the matter at considerable length, and cited many authorities, and, among other things, said:

"The plaintiffs herein claim that the defendants constructed dams and ditches in Sanpete county, and by means thereof wrongfully diverted water from the Sevier river, and that, as a sequence, the plaintiffs were deprived of the water which of right belonged to them, and with which they were entitled to fill their dams and ditches in Millard county. * * * The right of plaintiffs to have that portion of the river to which they were entitled flow in the natural water course to the heads of their ditches is an incorporeal hereditament appurtenant to the water course. The complaint shows that this right was invaded by a wrongful diversion in Sanpete county, by the defendants, and that damage or injury resulted to the plaintiffs in Millard county. The facts concerning the wrongful diversion and consequent injury are all essential to the plaintiffs' right of action. Neither the facts relating to the diversion alone nor those relating to the injury alone are sufficient to constitute a cause of action against the defendants. This is so because the mere construction of dams and ditches in Sanpete county, or even the diversion of the water from the river, gave the plaintiffs no right to complain, so long as the water to which they were entitled was not diverted thereby. Likewise as to the injury, unless it were shown that it was caused by the wrongful acts of the defendants. Thus it is plain that some of the material facts arose in Sanpete county and some in Millard county, and the cause of action may properly be said to have arisen in each county. Therefore the plaintiffs had the right to elect in which they would bring their action, and, having chosen to bring it in Millard county, where a part of that which is essential to their right to recover took place, the venue was properly laid."

See, also, Lower Kings River Water Ditch Co. v. Kings River & Fresno Canal Co., 60 Cal. 408, 410.

In Willey v. Decker (Wyo.) 73 Pac. 210, the Supreme Court of Wyoming discussed the question involved in this case, and also cited many authorities, to which reference is here made, and held that, where owners of lands in Montana have acquired by prior appropriation the right to use for irrigating their lands the water of a stream by means of a ditch and headgate located in Wyoming, the district court of Wyoming has jurisdiction to restrain others from diverting the water by means of ditches located in Wyoming or in Montana for the irrigation of land in Wyoming; that the district court of Wyoming has jurisdiction to adjudicate the rights of the owners of land in Montana to the water of the stream so far as it may be necessary to protect their rights, though the court may not have jurisdiction to enter a decree for quieting the title of such owners to the water claimed.

There are no authorities in direct opposition to these views. It is true that certain cases have been cited by defendant, which, at first

blush, seem to point to the contrary; but these cases, upon careful examination, can be readily distinguished from the case at bar.

Thus, in Stillman v. White Rock M. Co., 3 Woodb. & M. 538, Fed. Cas. No. 13,446, it was held that the jurisdiction was in rem, and that a nuisance consisting of a wrongful diversion of water from a river which is the boundary line between two states must be enjoined in the state where the nuisance is located. The conclusion arrived at by the court proceeded solely upon the ground that in its opinion the suit was a proceeding quasi in rem to abate a nuisance, and that such suits must be brought where the nuisance exists. This is clearly shown by the opinion, in the course of which Judge Woodbury declares: "It might be reasonable, in a case like this, to hold a wrongdoer liable either where the direct act is done or where the consequential injury was felt." After quoting from Coke, pt. 7, p. 58, where numerous cases are illustrated: "When one matter in one county is depending upon the matter in the other county, then the plaintiff may choose in which county he will bring his action," he adds that: "It is settled that the wrongdoer may be sued where the mills are situated, if they are injured, though the cause of the injury may be in another county. Thompson v. Crocker, 9 Pick. 61. The action is, then, of course, one in form suited to the local injury felt or experienced to the real estate." The general views expressed by Judge Woodbury, in so far as applicable to a case like the present one, are in favor of the contention of complainant, and in accordance with the principles announced in the opinions referred to, and with the views I have already expressed.

In Massie v. Watts, 6 Cranch, 157, 3 L. Ed. 181, a suit in equity was instituted in the district of Kentucky by Watts, a citizen of Virginia, against Massie, a citizen of Kentucky, to compel Massie to convey to him 1,000 acres of land in the state of Ohio; the defendant having obtained the legal title with notice of plaintiff's equitable title. Chief Justice Marshall, speaking for the court, sustained the jurisdiction of the court in Kentucky. After declaring, that in one view of the case there would be "much reason for considering it as a local action, and for confining it to the court sitting within the state in which the lands lie," he remarked that, if the suit involved only the naked title to the land, "the jurisdiction of the circuit court of Kentucky would not be sustained. But where the question changes its character— where the defendant in the original action is liable to the plaintiff either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of mala fides practiced on the plaintiff—the principles of equity give a court jurisdiction wherever the person may be found; and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction."

The Northern Indiana Railroad Co. v. Michigan Railroad Co., 15 How. 233, 242, 14 L. Ed. 674, which is greatly relied upon by the defendant, is not in opposition to the views we have expressed. On the question of jurisdiction the court said:

"The jurisdiction of the Circuit Court of the United States is limited to controversies between citizens of different states, except in certain cases, and

to the district in which it sits. In this case we shall consider the question of jurisdiction in regard to the district only. In all cases of contract suit may be brought in the Circuit Court where the defendant may be found. If sued out of the district in which he lives, under the decisions he may object; but this is a privilege which he may waive. Wherever the jurisdiction of the person will enable the Circuit Court to give effect to its judgment or decree, jurisdiction may be exercised. But wherever the subject-matter in controversy is local, and lies beyond the limit of the district, no jurisdiction attaches to the Circuit Court sitting within it. An action of ejectment cannot be maintained in the district of Michigan for land in any other district. Nor can an action of trespass quare clausum fregit be prosecuted where the act complained of was not done in the district." Why? Because "both of these actions are local in their character, and must be prosecuted where the process of the court can reach the locus in quo."

In the general discussion of the case the court cites several authorities to the effect that courts of equity having authority to act in personam may act indirectly, under certain qualifications, upon real estate situate in another state.

The reference in these opinions to contracts, trust, or fraud was not intended to limit the jurisdiction to such cases only. There was no principle involved therein which called for any other statement.

In Phelps v. McDonald, 99 U. S. 298, 308, 25 L. Ed. 473, the court laid down the general doctrine, which, in my opinion, is applicable to this case, as follows:

"Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the lex loci rei sitæ, which he could do voluntarily, to give full effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree in personam according to those equities, and enforce obedience to their decrees by process in personam. 2 Story, Eq. § 899; Miller v. Sherry, 2 Wall. 237, 249 [17 L. Ed. 827]; Penn v. Lord Baltimore, 1 Ves. 444; Mitchell v. Bunch, 2 Paige, 606 [22 Am. Dec. 669]".

See, also, Muller v. Dows, 94 U. S. 444, 449, 24 L. Ed. 207; Cole v. Cunningham, 133 U. S. 107, 119, 10 Sup. Ct. 269, 33 L. Ed. 538; Dull v. Blackman, 169 U. S. 243, 246, 18 Sup. Ct. 333, 42 L. Ed. 733; Fargo v. Redfield (C. C.) 22 Fed. 373, 374; Marshall v. Turnbull (C. C.) 34 Fed. 827; Remer v. McKay (C. C.) 54 Fed. 432, 434; Gage v. Riverside Trust Co. (C. C.) 86 Fed. 984, 998; Great Falls Mfg. Co. v. Worster, 23 N. H. 462; Atlantic T. Co. v. Baltimore & Ohio R. R. Co., 46 N. Y. Super. Ct. 377; Alexander v. Tolleston Club, 110 Ill. 65, 77; 1 Story, Eq. Jur. § 743; High on Injunctions, §§ 103–107, 803; Kerr on Injunctions, 9; Beach, Mod. Eq. Pr. § 764.

The jurisdiction of courts of equity over the classes of cases affecting property situate without its local jurisdiction exists only when the relief sought is such that it may be given by the act of the person over whom the court exercises jurisdiction. That this court has jurisdiction over the person of the defendant is unquestioned. It can reach him by injunction, and punish him for contempt if he violates it. This doctrine had its foundation in the equity courts of England at an early day. In Penn v. Lord Baltimore, 1 Ves. Sr. 443, 454 (decided in 1750) Lord Chancellor Hardwicke said:

"As to the court's not inforcing the execution of their judgment, if they could not at all, I agree it would be in vain to make a decree; and that the court cannot inforce their own decree in rem in the present case. But that is not an objection against making a decree in the cause, for the strict primary decree in this court as a court of equity is in personam. * * * In the case of Lord Anglesey of land lying in Ireland I decreed for distinguishing and settling the parts of the estate, though impossible to inforce that decree in rem; but, the party being in England, I could inforce it by process of contempt in personam and sequestration, which is the proper jurisdiction of this court."

It necessarily follows from the views expressed as to the character and nature of this suit and the principles of law applicable thereto that the plea of defendant Rickey to the jurisdiction of this court is not well taken, and is hereby overruled.

2. With reference to the plea of defendants Simpson et al. but little need be said. In the interpretation of the plea reference must necessarily be made to the averments in the bill of complaint. Conceding it to be true that the defendants neither "own or claim to own or have any water rights or right to divert or use any water for irrigation or otherwise in any other manner or way than as co-owners, co-claimants, and tenants in common with complainant," still it does not necessarily follow that their interests lay wholly and entirely on the side of complainant in the controversy set out in said bill of complaint, because the plea falls far short of depriving this court of jurisdiction under the averments made in the bill. From an examination of the complaint it appears that complainant claims to be the sole owner of an earlier appropriation, "amounting to a flow of 133.48 cubic feet of water per second." In this appropriation the defendants named in the plea claim no interest whatever. The mere fact, therefore, that the named defendants are co-tenants in other appropriations of the water with complainant does not make "their interests lay wholly and entirely on the side of complainant," but, on the contrary, the averments in the complaint are to the effect that the co-tenants in later appropriations, as well as the other defendants, are claiming the right to deprive complainant of its rights in its earlier appropriation. The plea does not controvert these allegations of the bill. Every fact stated in the bill of complaint and not denied by answer in support of the plea must therefore be taken as true. Farley v. Kittson, 120 U. S. 303, 315, 7 Sup. Ct. 534, 30 L. Ed. 684. The plea, by reason of its insufficiency in the respects stated, must be overruled.

3. As to the demurrers. Before any reference is made to any of the specific points raised by the respective defendants, it should be broadly stated that the bill of complaint is not, in many of its averments, as full, clear, definite, and certain, or as satisfactory, as it might have been made. But, notwithstanding this general statement, the court must confine itself to the question whether or not the bill states facts in such a manner as will enable complainant to maintain the suit and obtain the relief asked for by a decree. No fact need be alleged which is not essential for the court to find in order to sustain a decree. The evidence need not be pleaded. It is only necessary for the bill to contain within itself sufficient matters of fact per

se to maintain the case of complainant, so that the same may be put in issue by the answer, and the facts thus stated may be established by the proofs.

In Story's Eq. Pl. § 23, it is said:

"In order to enable the court to understand the case, and to administer the proper remedial justice, as well as to apprise the opposite party of the nature of the claim, and of the redress asked, and to enable him to make the proper defense thereto, it would seem indispensable that the bill should contain a clear and exact statement of all the material facts. It should therefore show with reasonable certainty the rights of the plaintiff; the manner in which he is injured; the person by whom it is done; the material circumstances of the time, place, manner, and other incidents; the particulars in which he wants the assistance of the court—or, in other words, relief which he seeks."

And in section 25 it is said that:

"The pleadings in equity, although framed with a regard to certainty and uniformity, were always, in their style and character, of a more liberal and less technical cast than those at the common law. * * * But they have gradually attained a high degree of exactness and accuracy of statement; and, without being positively bound up in mere technical niceties and subtleties, they have become subjected to many rules of an artificial, although useful, establishment."

The bill of complaint, among other things, alleges "that the complainant is, and for a long time hitherto has been, the owner and seised in fee and in the actual possession of all those certain parcels of land situated in the county of Lyon, state of Nevada, in the district of Nevada, described as follows," and then mentions the townships and sections wherein said land is located, and avers "that the said parcels of land are contiguous to each other, and form one entire body of land; that there is a certain natural stream and water course known as 'Walker River,' which flows, and from time immemorial has flowed, to, over, upon, and through the said body of land, and the said body of land includes the banks, bed, and stream of said river; that the complainant is, and for a long time hitherto has been, the owner and seised in fee and in the actual possession of all those certain other tracts of land," described as above stated. And in paragraph 13 alleges "that in the year 1861 the grantors and predecessors in interest of complainant first appropriated and diverted from said river a portion of the waters of said river amounting to a flow of 133.48 cubic feet of water per second, and carried the same from said river upon the lands aforesaid, and used the same for the irrigation thereof; and from thence hitherto the complainant and its grantors and predecessors in interest have (except as hindered by said defendants as hereinafter alleged) continuously, openly, notoriously, peaceably, exclusively, and adversely to said defendants and to all the world, and claiming the right so to do, so diverted the said quantity of water from said river whenever there was a sufficient quantity of water naturally flowing in said river, and carried the same to and upon the lands aforesaid, and used the same for the irrigation thereof." In paragraph 14 it is alleged "that in the year 1862 the grantors and predecessors in interest of complainant first appropriated and diverted from said river a further portion of the waters of said river amounting to a flow of 57.35 cubic feet of water per second, and car-

ried the same from said river to and upon certain lands, and used the same for the irrigation thereof, and thereafter granted and conveyed to complainant five undivided twelfths of said water and of the right to appropriate and divert the same from said river; and from the said year 1862 the said grantors and predecessors in interest of complainant and the complainant and its co-owners have (except as hindered by said defendants as hereinafter alleged) continuously, openly, notoriously, peaceably, exclusively, and adversely to said defendants and to all the world, and claiming the right so to do, so diverted the said quantity of water from said river whenever there was a sufficient quantity of water naturally flowing in said river, and carried the same to and upon certain lands, and used the same for the irrigation thereof; and the complainant has so carried its five undivided twelfths of said water to and upon its lands aforesaid, and used the same for the irrigation thereof." Paragraph 15 is the same as 13, except it refers to a subsequent appropriation and diversion of water made in 1864 of 59.09 cubic feet of water per second. The other averments allege the different appropriations and diversions of water in substantially the same language as used in paragraph 14, the exception being as to the time of the appropriation and diversion and different quantities of the water. It is further alleged in the complaint "that within three years last past the said defendants have, and each of them has, diverted the waters of the said Walker river at divers places on said river above the said lands of complainant, and above the points at which the said complainant so diverts said water, a large portion of which water so diverted by them is never returned to said river, and they are now continuing the diversions aforesaid, and have thereby deprived and are now depriving the complainant of a large portion of the said water to which the complainant is so entitled; that each of said diversions so made by said defendants is without right, but the said defendants have so diverted said water, and are now so diverting the same, under claim of right so to do, and adversely to said complainant; that by the diversions aforesaid the complainant has been deprived and is now being deprived of sufficient water to irrigate its lands aforesaid, and is thereby rendered unable, and so long as said diversions are continued will be unable, to irrigate the lands aforesaid which it has so heretofore been accustomed to irrigate, and is thereby rendered unable and will be unable to properly or successfully cultivate the said lands or to raise crops thereon."

Several of the demurrers are quite lengthy. Some of the many points therein mentioned will be specifically noticed. In one of the briefs filed by counsel it is claimed:

"That the bill of complaint is insufficient for the following reasons: (1) The bill fails to specify particularly the description or location of Walker river, and the lands of complainant which are riparian in character. (2) That paragraphs 13 to 19, both inclusive, are insufficient, in that they fail to show upon what particular lands the waters of Walker river were conducted under the several and different diversions alleged in the bill; also fail to set out and aver the necessary facts of the derivative title of the complainant to the waters which it claims. (3) The same paragraphs are insufficient in failing to show the points where and the means by which the waters were diverted

!and carried upon the lands, and a description or such description or names of the ditches or the location thereof sufficient to inform defendants what particular appropriation complainant claims to own. (4) That there is no showing by the bill of complaint that the waters claimed to have been diverted were ever applied to a beneficial purpose. (5) That paragraphs 13 and 15 are insufficient in failing to show that any portion of the waters therein mentioned were ever conveyed, granted, or transferred to the complainant. (6) That the bill of complaint is insufficient in not showing that the points and means of diversion by complainant to be the same points and means of diversion of its grantors and predecessors in interest. (7) That paragraphs 14, 16, 17, 18, and 19 are insufficient in failing to show the persons owning as co-tenants of complainant, the undivided interests in the waters claimed, and in failing to aver or show any reason why such co-tenants have not been made parties to this proceeding. (8) That the bill of complaint is insufficient in failing to show that these defendants threaten to continue the wrongful diversion of the waters of Walker river."

The law is well settled that a right to the waters of a stream may be acquired by appropriation and actual diversion and application to a beneficial use. The particular point of diversion, and the means and methods used in diverting it, need not be alleged. They are at most mere matters of evidence in establishing the right to the amount of water claimed to have been appropriated, diverted, and beneficially used. While it would be proper to state the point of diversion, and is perhaps the usual custom so to do, I am not prepared to say that it is absolutely essential. The complainant cannot be held to the original point of diversion, but may at any time after the right is acquired change the point without injury to others. The same rule applies to the means used. It is immaterial, in acquiring the right, whether the water was taken from the river by means of a canal, ditch, flume, or pipe, or by any other method.

In Union Mill & M. Co. v. Dangberg (C. C.) 81 Fed. 73, 115, this court said:

"The right to water acquired by prior appropriation is not dependent upon the place where the water is used. A party having obtained the prior right to the use of a given quantity of water is not restricted in such right to the use or place to which it was first applied. It is well settled that a person entitled to a given quantity of the water of a stream may take the same at any point on the stream, and may change the point of diversion at pleasure, and may also change the character of its use, if the rights of others be not affected thereby."

In Jerrett v. Mahan, 20 Nev. 89, 99, 17 Pac. 12, 15, the Supreme Court said:

"The facts material to be alleged were plaintiff's prior appropriation and defendant's diversion."

In Charnock v. Higuerra, 111 Cal. 473, 477, 44 Pac. 171, 172, 32 L. R. A. 190, 52 Am. St. Rep. 195, the court, in speaking of the rights of riparian proprietors, said:

"In fact, it has always been considered that the reasonableness or lawfulness of any given diversion of water is in no wise affected by the mere mode of diversion. Thus, in Elliot v. Fitchburg Ry. Co., 10 Cush. 191, 57 Am. Dec. 85 (cited with approval in Lux v. Haggin, 69 Cal. 402, 404, 10 Pac. 674), Chief Justice Shaw said: 'One man may take water from a perennial stream of moderate size, by means of buckets or a pump—for the mode is not material —to water his garden.' And in such a case he says, 'The water would be for irrigation,' and such 'might be regarded as a reasonable use.' So this court has repeatedly held that a prior appropriator of water may change, at pleasure,

the place or mode of his diversion, so long as others are not injured by such change."

See, also, Walsh v. Wallace, 26 Nev. 299, 327, 65 Pac. 945, 67 Pac. 212.

As to the sufficiency of the findings to support a decree in cases of this character, see Jones v. Adams, 19 Nev. 78, 6 Pac. 442, 3 Am. St. Rep. 788. And for a general statement as to the rules and principles applicable to riparian proprietorship and the rights acquired by prior appropriation, see Union M. & M. Co. v. Dangberg (C. C.) 81 Fed. 94.

The averments in the bill describe the lands owned by complainant upon which the water was beneficially used by townships and sections. In a suit of this character it is not absolutely essential to set out the derivative title of the complainant to the water which it claims. It was unnecessary to allege the particular tract or tracts of land that had been irrigated by the complainant or its grantors, or the character of the crops grown thereon, or to give the names of its grantors or predecessors in interest. It is not necessary to aver in the complaint that the raising of crops by the irrigation was successful. The authorities cited by defendants have reference to the character of the evidence necessary to establish a valid appropriation of the water, not to the sufficiency of the pleadings, with which we have alone to deal.

It is alleged that the waters of Walker river were appropriated and diverted therefrom, and used upon lands that were contiguous "for the purpose of irrigation." It is true that the diversion of the water only ripens into a valid appropriation when it is utilized by the appropriator for a beneficial use. But it need not be alleged in the complaint that the irrigation of lands is a beneficial use. If irrigation in a dry and arid climate like Nevada is not a beneficial use of the water, it would be difficult to determine what is.

In Union Mill & M. Co. v. Dangberg, supra, this court, speaking of the necessity of the application of the rule of appropriation, said:

"The climate is dry. The soil is arid. The land is unproductive without irrigation. When water can be used thereon, it becomes capable of successful cultivation. * * * A large proportion of the area of land suitable for cultivation would have to remain in its wild and unproductive state, covered only by the natural growth of sagebrush and greasewood, unless the right to appropriate and divert the water of the streams away from the channel for the purpose of irrigating such lands is recognized and secured."

Paragraphs 14 and 16 to 19, inclusive, are, however, subject to criticism, at least, in this: that they do not show upon what lands the additional amounts of water appropriated by complainant's grantors were used by said grantors. In the interest of good pleadings, I am of opinion that these paragraphs ought to be so amended as to specify the lands as being within certain townships or sections, or as to the quantity of such lands in whatever county the same are situated. In other words, the reference to "certain lands" should be made more clear, definite, and certain, so as to enable the defendants to advisedly answer the averments.

The other objection made to the averments, to the effect that it is uncertain as to the lands upon which complainant has used its undivided interests in the water, is not well taken, because the language

used is, in my opinion, only susceptible of the interpretation that such water was used and is being used by complainant upon the lands described by it as being situate in certain townships and sections.

With reference to the point made by the demurrers that ·the cotenants of complainant are necessary parties, and that the bill is insufficient because it does not aver that they are all made parties to the suit, it is enough to say that the identical questions here presented were raised, discussed, and decided adversely to the contention of defendants in Union M. & M. Co. v. Dangberg (C. C.) 81 Fed. 89. See, also, Rodgers v. Pitt (C. C.) 89 Fed. 420.

In order to authorize the court to issue an injunction, the allegations in the bill as to the plaintiff's rights must be specific and definite, and it must affirmatively appear from the facts alleged therein that injury will be sustained by the complainant in consequence of the alleged wrongful acts of the defendants. 10 Ency. Pl. & Pr. 940, 946, 950, and numerous authorities there cited.

Specific objection is urged to the bill in this:˙ that it is not alleged therein "that defendants intend to, threaten to, or will continue their alleged diversion if not restrained by this court." The words "threaten to continue" are often used, and in many cases are certainly appropriate; but no set form of words is essential. Technical forms are not always necessary. In determining the rights of the parties the court looks to the nature of the acts. In Kerr on Inj. 15, the author said:

"The mere prospect or apprehension of injury, or the mere belief that the act complained of may or will be done, is not sufficient; but if an intention to do the act complained of can be shown to exist, or if a man insists on his right to do, or begins to do, or threatens to do, or gives notice of his intention to do an act which must, in the opinion of the court, if completed, give a ground of action, there is a foundation for the exercise of the jurisdiction."

The sum and substance of the authorities are to the effect that complainant must state in its bill sufficient facts to satisfy the court that the issuance of an injunction is necessary in order to give the complainant the relief to which it is entitled in a court of equity. The averments of the bill, taken in their entirety, clearly state facts sufficient to entitle complainant to the equitable relief prayed for. The rule is well settled that a bill which discloses, as this does, a continuing trespass on the lands of complainant by a large number of defendants, and a constant and wrongful diversion of water from a stream thereon, which ·tends to depreciate the value of the land, is sufficient to entitle the complainant to an injunction against such trespass. King v. Stuart (C. C.) 84 Fed. 546, 549, and authorities there cited; U. S. F. L. & E. Co. v. Gallegos, 89 Fed. 769, 773, 32 C. C. A. 470; Gould on Waters (3d Ed.) § 236, p. 469; Kinney on Irrigation, § 332.

The several demurrers are, upon all points made therein, save and except in the one particular as to the uncertainty of the words "certain lands," overruled, and as to that point the demurrers are sustained.