'ANDERSON LAND & STOCK CO. v. McCONNELL et al.

(Circuit Court, D. Nevada. December 5, 1904.)

No. 783.

**1. WATER COURSES—BILL TO ENJOIN DIVERSION—SUFFICIENCY.**

A bill by an owner of land to enjoin the diversion of water from a stream is sufficient to entitle complainant to such relief if it clearly shows that he is entitled by right of prior appropriation to a certain quantity of water from the stream for purposes of irrigation, and that defendants, under claim of right, have diverted, and are continuing to divert, water from the stream above, with the result of depriving complainant of the quantity to which he is so entitled, which tends to depreciate the value of his lands. Averments of evidential matter are not essential, and defects therein do not affect the sufficiency of the bill.

**2. SAME.**

An allegation, in a bill to enjoin diversion of water from a stream, that on a certain date complainant's grantors appropriated, and have since used, sufficient water to irrigate the lands described, "to wit, more than one hundred cubic feet of water per second," will be treated as asserting a prior claim to 100 feet of water per second only, and, as so construed, is sufficiently definite as to quantity.

**3. SAME.**

An allegation that, in a certain year, complainant's grantor, by means of dams, diverted from a river and its tributary a stated quantity of water, which was and is still applied to beneficial use on the lands described, is sufficient in a bill to enjoin the diversion of water from the two streams by a subsequent appropriator, although it does not allege the quantity appropriated from each stream by complainant, nor the precise date of each appropriation, which are merely matters of evidence.

In Equity. On demurrer to bill.

This is a suit in equity to enjoin the diversion of water by defendants from Quin river and Twelve Mile creek, in Humboldt county, Nev. The complaint, among other averments, alleges: That complainant is, and that its grantors ever since 1869 have been, the owners of certain agricultural lands, known as the "Anderson Ranch," particularly describing it by metes and bounds. "(5) That Quin river and Twelve Mile creek (the latter being a tributary of the former) are natural surface streams of water, which have, save when wrongfully diverted, from time immemorial constantly flowed over, through, and upon the above described lands, and of right ought still to flow over. through, and upon the same. (6) That said lands embrace the natural banks, bed, and channel of said Quin river, and also of said Twelve Mile creek. (7) That on or about the ——— day of ———, 1869, the grantors and predecessors in interest of complainant first constructed certain dams in the channel of said Quin river, and also other dams in the channel of said Twelve Mile creek, and ditches leading therefrom and from said dams, by means of which they appropriated and diverted and turned out of and from said creek and from said river, and onto the above described lands, sufficient water for the proper irrigation of the same, to wit, more than one hundred cubic feet of water per second. * * * (10) * * * That on or about the ——— day of May, 1902, the said defendants wrongfully and unlawfully entered upon said Quin river and said Twelve Mile creek at points above the said lands, dams, and ditches of this complainant, and diverted all of the waters of said river and said creek away from the channels of said streams, and away from complainant's said lands, dams, and ditches; and ever since said ——— day of May, 1902, defendants have continued to so divert said water, and the whole thereof, away from the said lands, and away from the above-mentioned crops growing thereon, and away from complainant's said dams and ditches.

\* \* \* (13) That defendants claim some interest in the waters of said Quin river and Twelve Mile creek adversely to complainant, and under such claim are now wrongfully and unlawfully taking such water, and are diverting said waters, and the whole thereof, away from said streams, and the lands, crops, and stock of complainant, and threaten and intend to divert and take, and will continue to so divert and take, the same away from complainant's said lands and crops, and deprive complainant of the use of said waters, and render said lands unproductive and valueless, to complainant's great and irreparable injury and damage, unless restrained by the order of this court."

A demurrer was interposed to this bill upon the ground that it does not appear that the defendants "have wrongfully diverted or deprived the complainant of any of the water or waters of said Quin river or Twelve Mile creek at any period when complainant was entitled to the same"; that it does not appear that any diversion alleged to have been made by defendants "has injured or damaged said complainant"; that it does not appear that complainant, "at any time before the commencement of this suit, diverted, appropriated, used, or applied any of the waters of said Quin river or of said Twelve Mile creek for any or all of the purposes therein mentioned." It is also claimed that the bill is indefinite and uncertain, especially paragraph 7 thereof, "in that it does not show what part or portion of the one hundred cubic feet of water the grantors and predecessors in interest of said complainant diverted from said Quin river by the dams and ditches therein mentioned, or what part or portion of said one hundred cubic feet of water was diverted or appropriated by certain dams and ditches therein mentioned of the waters of Twelve Mile creek; \* \* \* that it does not show to or upon what lands in said complaint described the waters of Quin river so described were used, or to or upon what lands the waters of Twelve Mile creek were used, by the predecessors and grantors of said complainant; \* \* \* that it does not show that said complainant has ever diverted, used, or applied any of the waters of said Quin river or said Twelve Mile creek for any of the purposes therein alleged, or has ever irrigated by said waters, or any part thereof, any of the lands described in said bill of complaint."

Mack & Farrington (Geo. D. Pyne, of counsel), for complainant.
H. Warren and Cheney, Massey & Smith, for defendants.

HAWLEY, District Judge (orally). Nearly all the points raised by the demurrer herein are controlled by the principles announced by this court in Miller & Lux v. Rickey, 127 Fed. 573, 581, et seq. The complaint in this case is the opposite of the complaint in that case, in this: that in that case the pleader sought to make his averments as brief as possible, and left out certain allegations that would have been proper—in order to have avoided the points raised by the demurrer—while here the pleader elaborated his averments to an unnecessary extent, and inserted more than was necessary. Notwithstanding these extremes, the court must confine itself to the question, as stated in the Miller & Lux Case:

"Whether or not the bill states facts in such a manner as will enable complainant to maintain the suit and obtain the relief asked for by a decree. No fact need be alleged which is not essential for the court to find in order to sustain a decree. The evidence need not be pleaded. It is only necessary for the bill to contain within itself sufficient matters of fact per se to maintain the case of complainant, so that the same may be put in issue by the answer, and the facts thus stated may be established by the proofs."

Objections are made to certain averments: "That during the years 1901 and 1902 the grantor of complainant had large and valuable crops, to wit, more than four thousand acres of hay, grass,

and other crops growing on said lands.  In order to properly irrigate and mature said crops, it was necessary to use all of said one hundred cubic feet of water per second of the waters of said Quin river and Twelve Mile creek;" and that defendants had diverted the water to such an extent as to injure the crops of complainant's grantors, and they had suffered damage therefrom, etc.

This is not a suit to recover damages for the injuries committed by defendants against complainant's grantors, but for the purpose of protecting the rights of the complainant to the free and unobstructed flow of 100 cubic feet of water per second from Quin river and Twelve Mile creek, appropriated by its grantors and predecessors in interest in 1869.  All of the various allegations concerning the damages which the grantors suffered by reason of the wrongful acts of the defendants in diverting the water from the land are alleged, as tending to show that the whole of such waters had been used for a beneficial purpose, and the irreparable nature of the defendants' trespass, and the injury and damage that would result to complainant's land unless such acts on the part of the defendants be restrained by this court.  After these allegations comes averment 13, quoted in the statement of facts, which is clear, direct, and positive as to the diversion of the water by defendants from complainant, and their threats to continue such diversion under a claim of right so to do.

The bill, fairly construed, shows a single object, and seeks only to enforce the complainant's rights to the use of the water for a beneficial purpose, and to have an injunction to prevent defendants from interfering with its alleged rights in the premises.  The allegations of the bill of complaint, referred to in the foregoing statement, clearly show a damage and injury to complainant's rights as the owner of the lands in question, and are sufficient in their character to sustain the right of complainant to obtain final relief by injunction.  Complainant not only shows that defendants were diverting the water from it, but that they also claim to have the right to divert it, and threaten to divert it, from complainant.

In Brown v. Ashley, 16 Nev. 311, 315, the Supreme Court of this state, following the principles announced in Barnes v. Sabron, 10 Nev. 217, 247, said:

"Where the act complained of is committed by the defendant under a claim of right which, if allowed to continue for a certain length of time, would ripen into an adverse right, and deprive the plaintiff of his property, the plaintiff is not only entitled to an action for the vindication of his right, but also for its preservation.  This is especially true of actions for the diversion of water, where there is, as in the present case, a clear violation of an established right, and a threatened continuance of such violation.  * * *  In such cases it is not necessary to show actual damages, or a present use of the water, in order to authorize a court to issue an injunction and make it perpetual."

Numerous authorities are there cited in support of the views expressed by the court.

In Miller & Lux v. Rickey, supra, page 586, specific objection was made to the bill of complaint upon the ground that it did not

aver "that defendants intend to, threaten to, or will continue their alleged diversion if not restrained." The court said:

"The words 'threaten to continue' are often used, and in many cases are certainly appropriate, but no set form of words is essential. Technical forms are not always necessary. In determining the rights of the parties the court looks to the nature of the acts."

And, after quoting from Kerr on Inj. 15, said:

"The sum and substance of the authorities are to the effect that complainant must state in its bill sufficient facts to satisfy the court that the issuance of an injunction is necessary in order to give the complainant the relief to which it is entitled in a court of equity. The averments of the bill, taken in their entirety, clearly state facts sufficient to entitle complainant to the equitable relief prayed for. The rule is well settled that a bill which discloses, as this does, a continuing trespass on the lands of complainant, * * * and a constant and wrongful diversion of water from a stream thereon, which tends to depreciate the value of the land, is sufficient to entitle the complainant to an injunction against such trespass. King v. Stuart (C. C.) 84 Fed. 546, 549, and authorities there cited; U. S. F. L. & E. Co. v. Gallegos, 89 Fed. 769, 773, 32 C. C. A. 470; Gould on Waters (3d Ed.) § 236, p. 469; Kinney on Irrigation, § 332."

Paragraph 7 of the bill must be construed as asserting a right by appropriation to only "one hundred cubic feet of water per second." The words "more than" will be treated as having been inadvertently used. If complainant claims more than 100 cubic feet of water per second, it should ask leave to amend the complaint so as to make the amount claimed specific and certain. As thus construed, paragraph 7 of the bill is sufficiently definite and certain as to the appropriation and diversion of 100 cubic feet of water per second from Quin river and Twelve Mile creek.

But it is earnestly argued that, as against a specific demurrer, the bill of complaint is uncertain in not stating the amount of water appropriated from each stream, and the time when the appropriation was made; the contention being that, under the language of the bill, two separate and distinct appropriations were made—one from the river and the other from the creek. Complainant claims that under the averments there was but one appropriation made, to wit, from the river and the creek. Cases may undoubtedly arise, or may readily be imagined, where it might be necessary for the pleader to be more specific as to the time, amount of water appropriated, and the use made thereof, with reference to each stream; but, so far as the present case is concerned, the question whether there was more than one appropriation made is immaterial. The point raised by the demurrer is more to the form than to the substance. The averment, in substance, is that the grantors of complainant in 1869 made an appropriation, and under it diverted water from Quin river and its tributary, Twelve Mile creek, to the extent stated. The averments in the bill are sufficiently certain and definite to advise the defendants of what they are called upon to answer.

In Long on Irrigation, § 60, the author says:

"Where an irrigator, by prior appropriation, has acquired the right to the flow of a stream, or to a certain quantity of the water, it follows necessarily that his appropriation is, in effect, an appropriation also of all the tributaries

and other sources of supply of the stream, so far as this may be necessary to insure to him the quantity of water covered by his appropriation. Hence other appropriators or persons will not be permitted to so divert or control the water of tributary streams as to cut off the sources of supply, and prevent the prior appropriator from receiving the full amount of water to which he is entitled."

It is claimed by the defendants that this statement, with the authorities cited in support thereof, does not reach the precise objection here urged. Be that as it may, it certainly marches up very close to it, and clearly shows the trend of judicial minds in relation thereto. The particular manner in which this appropriation was made is a mere matter of evidence, and was not required to be stated with greater particularity.

In Miller & Lux v. Rickey, supra, page 584, this court said:

"The law is well settled that a right to the waters of a stream may be acquired by appropriation and actual diversion and application to a beneficial use. The particular point of diversion, and the means and method used in diverting it, need not be alleged. They are at most mere matters of evidence in establishing the right to the amount of water claimed to have been appropriated, diverted, and beneficially used."

The averments of the bill are sufficiently specific as to the lands upon which complainant and its grantors used the water.

The demurrer is overruled.