WICKERHAM *v.* WOEHLECKE.

[No. 14,962.   Filed April 19, 1935.]

*Jackiel W. Joseph, Linn D. Hay,* and *Theodore R. Dann,* for appellant.

*A. W. Fenstermacher,* and *L. William Curry,* for appellee.

CURTIS, J.—The appellee commenced this action in the trial court against the appellant to recover damages for

injuries alleged to have been sustained by her as the result of being struck by an automobile owned and operated by the appellant. The complaint was in two paragraphs, each of which was later amended. The appellant filed an answer in general denial to each amended paragraph. Upon the issues thus joined the cause was submitted to a jury for trial, resulting in a verdict in favor of the appellee against the appellant in the sum of $3,500.00, upon which judgment was entered. The appellant seasonably filed a motion for a new trial which was overruled with an exception reserved to the appellant and this appeal prayed and perfected, assigning as the only error the ruling of the court upon said motion.

The motion for a new trial contains 18 causes or grounds. Only causes 1, 2, 3, 17, and 18 need be considered. The other causes are waived by failure to present the same for review in the appellant's brief. Causes 1, 2, and 3 are respectively that the damages assessed by the jury are excessive, that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law. Under causes 17 and 18 of the motion, error is predicated upon the giving by the court on its own motion of each of 24 instructions numbered 1 to 24, inclusive; the giving by the court of each of instructions numbered 2, 4, and 10, tendered by the appellee; and the refusal to give each of instructions numbered 1, 1½, 3, 5, 8, 9, 10, 13, 14, and 16, tendered by the appellant. The instructions given by the court, according to the appellant's own reply brief, were the 24 given on the court's own motion, together with said instructions number 2, 4, and 10, tendered by the appellee, and instructions 2, 4, 6, 7, 11, 12, and 15, tendered by the appellant. The record bears out the appellant's statement as to the instructions. But the appellant in his brief has not set out the said instructions 2, 4, 6, 7, 11, 12, and 15, tendered by the appellant and given by

the court, and now asks this court to consider alleged errors as to instructions. Unless all of the instructions given in a cause are set out in the appellant's brief this court cannot consider any alleged errors as to any of the instructions. This has been the rule since the rules of the Supreme Court and this Court were amended on January 1, 1924. See clause 5 of Rule 21 of the Supreme Court and this Court, effective November 15, 1933. (Formerly clause 5 of rule 22.) See also *Hope State Bank* v. *Cleveland Securities Corporation* (1931), 92 Ind. App. 683, 176 N. E. 861; *Haven* v. *Snyder* (1931), 93 Ind. App. 54, 176 N. E. 149; *Cole* v. *McLean* (1931), 93 Ind. App. 526, 177 N. E. 348; *Linn Grove Light and Power Company* v. *Fennig* (1927), 86 Ind. App. 170, 154 N. E. 877. No question, therefore, is presented for our consideration as to the instructions.

We now take up causes 1, 2, and 3 of the motion which we have previously mentioned and we think they may be properly considered together. They each require an examination of the evidence under the issues for their determination. No question is presented for review as to the admission or exclusion of evidence.

The appellant contends, first, that the evidence does not show that the appellant was guilty of the negligence charged in the complaint and, secondly, that the evidence shows that the appellee was guilty of contributory negligence as a matter of law and, thirdly, that the damages assessed are excessive.

Each paragraph of the complaint as amended alleged substantially the same facts. They each proceeded upon the theory that while the appellee was crossing Market Street from the south to the north at the junction of that street and the west side of Delaware Street in the city of Indianapolis, Indiana, and while she was in the act of crossing said street at that place with the traffic signals displayed giving her permission to so cross said

street and before she had completed the crossing, the appellant carelessly and negligently drove his automobile eastwardly on Market Street in such a manner as to strike her, causing the injuries alleged in the complaint. The main difference in the two paragraphs is that in the first paragraph reliance is placed upon what is alleged to be the traffic custom and police regulation at the place of the accident as to stop and go signals and the second relies mainly upon an ordinance of the city of Indianapolis regulating traffic at the street intersection in question. The particular provision of the ordinance relied upon is as follows: "Section 16. (a) . . . A pedestrian crossing or starting to cross any such crosswalk on a Green or 'Go' signal shall have the right of way over all vehicles, including those making turns, until such pedestrian has reached the opposite curb or safety zone, and it shall be unlawful for the operator of any vehicle to fail to yield the right of way to any such pedestrian."

The physical and other injuries described in the complaint are as follows:

"That because of said negligence defendant ran his automobile against plaintiff with great force and knocked her down upon the hard surface of said streets and seriously bruised and injured plaintiff and tore loose ligaments in the pelvic region of her body; that because of said negligence and injuries, plaintiff sustained a severe nervous shock, from which she will never fully recover; that because of said negligence and injuries plaintiff is required to have the pelvic region of her body braced; that because of said negligence and injuries plaintiff's future is darkened in regard to forming marital relations and child bearing; that said injuries will prevent the full enjoyment of marital life and prevent the plaintiff from child bearing; that because of said injuries the function of child bearing, if the same can be hazarded at all, will be at the risk of aggravation of her physical condition, making it worse than it now is or otherwise would be; that

plaintiff was compelled to and did procure the services of a physician and surgeon in endeavoring to cure and remedy said injuries and that said services were reasonably worth seventy-five dollars; that plaintiff will be compelled to procure such services in the future, the amount and value of such services plaintiff does not know; that because of said injuries plaintiff suffered intense pain and mental agony and will continue in the future so to do; that at the time of said injuries and for a long time prior thereto plaintiff was employed and earned $27.50 per week and that because of said injuries plaintiff is rendered less capable to secure employment and promotion and will so continue as long as she suffers from the effects of said injuries."

We quote from the appellant's concise statement of the appellee's evidence as a witness as follows: "I am the plaintiff in this case; thirty-eight years old. On April 26, 1930, I was employed at the Big Four Office at the Beech Grove Shop; had been employed there over eleven years. Went into the service there about 1920 and have been employed there since that time. During all of this time never laid off on account of sickness except one or two days in a year for a cold or something of that kind but no illness. I am a stenographer and do general clerical work. April 26, 1930, was Saturday. About noon that day I had come into town from Beech Grove. I went to the bank and was walking east on Market Street to the City Market. I walked east to the corner of Delaware and Market Streets and stopped. I stopped for the traffic signal. When I reached the curb the 'Stop' signal was exposed for the north and south traffic and the 'Go' for the east and west. I stopped because pedestrians going north and south had the 'Stop' signal. The 'Go' signal was for motorists going east and west driving on Market Street. I waited a minute or two for the signal to change. The signal changed while I was waiting. The signal was then exposed for north and south traffic which means 'Go.' I was on the west

side of Delaware street and on the south side of Market street. When the green signal was exposed I started to walk across the street. I judge there were twenty or twenty-five pedestrians who were close around me. I did not get as far as the center of the street, somewhere between the curb and the center of the street but further from the center than the curb. I was facing north and as I was crossing there it seemed as though some car was simply leaping out of the air at me. I put my hand on the car to keep from going under the wheels. I was pushed and after I picked myself up I was dazed. I was lying out in the street near the signal on Delaware street. I got up and made my way to the curb and sat down. I fainted. The pain was fierce. I hit on my right hip and elbow. The policeman picked me up on my feet and I fainted again. They asked me about going to the hospital and I objected. I would rather go home. A doctor came in and looked me over and said I seemed to be able to be moved. I went home and because I shook I drank a cup of coffee. I went to bed; my sister called a physician. The doctor gave me something for my nerves as I was trembling so. I was no better the next day, if anything I felt worse. Dr. Frick advised that I go to the hospital and have an X-Ray made. I could not get out of bed until I had this supporter; I couldn't put my weight on my feet. The X-Ray was made after I had this supporter. I was confined to the house for about three weeks. Dr. Frick is now dead. During the three weeks I called at Dr. Frick's office, that is a matter of two streets farther east. I rode in a car, someone took me down there. There is constant pain in the hips and lower part of my back; there is a dull achy pain, then at times there is a sharp pain; I am nervous; at times I have no comfort sitting or standing; I walk stiffly. If I work bending over a desk there is constant pain or when I do household duties, such as sweeping or ironing.

There is pain there now. It is hard to locate any specific spot because the pain travels down the leg. My right side generally affected; the pain is constant. It is aggravated by the kind of work I am doing. I cannot use that limb just the same as I do the other. When Dr. Frick died I went to see Dr. Himler; that was in the fall or winter. It seemed at that time that my leg bothered me so much worse. Dr. Frick advised that medical attention would not do me any good; it was a matter of letting nature take care of it. My work aggravated it and I was transferred from the desk to the blue-print room. Dr. Himler strapped my body with adhesive tape. He gave me something for my nerves and something to kill the pain. I wear this belt around my hips, it is tight. I also wear a tight elastic girdle. In warm weather it is very uncomfortable. I have never been married. Since I have been consulting Dr. Himler I have seen him five or six times. He advised me to take some sort of heat treatments. I paid Dr. Frick about seventy-five dollars. After the accident I was rather run down and Dr. Frick advised some shots in the arm. I took about twelve of these shots, but they did no good. That was three weeks after the injury; those treatments cost two dollars each; the belt cost ten dollars; two elastic belts cost three dollars each; X-Rays cost me thirty dollars. I paid Dr. Himler about twelve dollars. I had no nervous trouble prior to the accident. Since the accident my sleep has been affected; at times the pain is so intense I get up and walk around to relieve myself; difficult to sit in one position for a long time at my desk. I get relief when lying on my back; any other time I am conscious of the pain. It is difficult to lay on my right side. Bending over and standing up aggravates my injury. Delaware street is about fifty feet, curb to curb, at this intersection; Market street about forty feet. I live with my parents at 249 Wolcott street. I have lived there about

ten years. In order to be at my desk I have had to take some tablets of some kind; I take them right along; that condition has existed all the time since the injury." One of the doctors who attended the appellee testified in part as follows: "This condition which I have described would be aggravated in the case of child birth. I would not hold a very favorable opinion as to complete recovery. I would say that the patient being hit by an automobile and falling on her right side in the street would manifest the symptoms I have described."

The evidence shows that the appellant's car also hit two other persons at the time it hit the appellee. These people were also pedestrians going across the street at the same time as was the appellee. The appellant said he was going east on Market street and thought he had the "go" sign and that he saw no one until he hit them and that when the officer "flipped the sign" he jammed on his brakes and stopped as quickly as possible, but not in time to avoid the accident.

We have read the condensed recital of all of the evidence as contained in the appellant's brief and as corrected by the appellee. It is not necessary for us to review it all herein. While some of it is sharply conflicting yet we think that there is evidence to prove the necessary allegations of the complaint and that it is sufficient to sustain the verdict. The question of the negligence of the appellant and the contributory negligence, if any, of the appellee were questions of fact for the jury to decide. The burden of proving contributory negligence on the part of the appellee was upon the appellant. The verdict of the jury was adverse to the appellant upon both of said issues. This court will not weigh the evidence and substitute its judgment for the verdict of the jury where there is any competent evidence or legitimate inferences that may be drawn from such evidence to sustain the verdict.

The medical testimony on some important elements of damage is conflicting. There was evidence which the jury had the right to believe covering the main elements of damage alleged in the complaint. We cannot say as a matter of law that the verdict of the jury is excessive.

No reversible error is shown. The judgment is affirmed.